J. C. ADERHOLT v. SEABOARD AIR LINE RAILWAY et al.

(Filed 27 April, 1910.)

1. Damages—Release—Avoidance—Burden of Proof.

A release of claim for damages for personal injury based upon a valuable consideration is a complete defense to an action to recover them, and when its execution is admitted or established by the evidence the plaintiff must prove matter in avoidance.

2. Same—Evidence—Nonsuit.

When the execution of a release founded upon a valuable consideration has been admitted in an action to recover damages for personal injury, and it appears from the evidence that the plaintiff signed it, in full possession of his faculties, two months after the injury, upon condition that if the consideration should be paid the release would be effective, and about two weeks thereafter signed the final release upon receiving the stipulated payment, a judgment of nonsuit upon the evidence, upon defendant's motion, should be granted, the evidence as to fraud in its procurement not being sufficient to carry the question to the jury.

3. Damages—Release—Signing—Knowledge Presumed.

One who has voluntarily signed a release for damages, being able to read and having been afforded full opportunity to do so, is charged with knowledge of its contents.

4. Damages—Release—Fraud—Intent—Evidence Insufficient.

Evidence that plaintiff, an employee, voluntarily signed a conditional release for the damages for personal injury sought in his action, about two months after the injury, and a final release about two weeks thereafter, upon receiving the valuable consideration therein named, and that, at the time the conditional release was signed, the defendant's claim agent said that plaintiff could retain his position as employee of defendant as long as he could do the work satisfactorily, is no sufficient evidence of a fraudulent intent on defendant's part in procuring the release, it appearing that plaintiff was again employed, but was discharged by one of defendant's vice-principals for inefficiency, and without knowledge of the release or plaintiff's claim therein.

APPEAL from W. R. Allen, J., at October Term, 1909, of WAKE.

The plaintiff brought this action to recover damages for personal injuries which he alleged resulted from the negligence of the defendant company, while he was in the discharge of his duties as roadmaster. The defendant denied the allegations of the complaint as to its negligence, and set up as a defense certain releases executed by the plaintiff. The plaintiff replied, admitting the execution of the releases set forth in the answer, but alleged that they were procured by fraudulent representations. The issues submitted were found against the defendant; and judgment being rendered thereon, defendant appealed.

*Douglass & Lyon* and *Armistead Jones & Son* for plaintiff.
*Murray Allen* and *W. H. Pace* for defendant.

WALKER, J.   In the view we take of this case, it is only necessary to consider questions relating to the first and second issues:

1. Did the plaintiff execute and deliver the several releases mentioned in the answer?   Answer: Yes.

2. Did the defendant secure the signature of plaintiff to said release with the fraudulent intent as alleged in the pleadings? Answer: Yes.

That the jury's response to the first issue, which was made by consent, would have put an end to this cause, in the absence of an affirmative answer to the second issue, is a matter not open to dispute.   A release executed by an injured party and based upon a valuable consideration is a complete defense to an action for damages for the injuries, and where the execution of such a release is admitted or established by the evidence, it is necessary for the plaintiff to prove the matter in avoidance of the release. In this case the plaintiff admits the execution of the releases relied upon by the defendant, and alleges in his reply that they were procured by the representations of the defendant, made with fraudulent intent, that the plaintiff should have employment with the defendant, in his former capacity, as long as he could properly discharge his duties; and the second issue, quoted above, was intended to cover that view of the case.   The burden of that issue was upon the plaintiff, and, as we have said, unless he sustained the burden and procured an affirmative response to that issue, he could not have recovered in this action, and the jury's finding upon the issues of negligence, contributory negligence and damages would have been unnecessary and of no avail to the plaintiff.

At the conclusion of the evidence the defendant entered a motion of nonsuit, which raises the question of the sufficiency of the evidence to be submitted to the jury on the second issue, that is, whether or not there was any evidence of fraud in the procurement of the releases.   Upon a careful examination of all the testimony, we are of the opinion that there was not sufficient evidence of fraud to be submitted to the jury, and the defendant's motion of nonsuit should have been sustained.

Plaintiff's evidence shows a state of facts that is inconsistent with an intention on the part of the defendant to procure the releases in this case by fraud.   The plaintiff sustained the injuries complained of on 5 April, 1905, and was removed to the home of his father-in-law at Sanford, N. C., and more than

two months elapsed before the defendant's agent called on him. The plaintiff himself says that no settlement was made at the time of the first visit, but that defendant's agent returned at the end of two or three weeks, and, on 5 July, three months after the injury, a conditional release agreement, in the following words, was signed by the plaintiff: "If, before the expiration of thirty days from this date, the Seaboard Air Line Railway shall pay to me, J. C. Aderholt, the sum of $300, I do hereby agree to release the said railway of and from all claims whatsoever for damages for or on account of personal injury sustained by freight train parting and running together, throwing me against seat, breaking four ribs and injuring back, on 5 April, 1905." At the time of signing this agreement, besides the plaintiff's and defendant's agent, there were present D. M. McIver, plaintiff's father-in-law, and Miss Mary McIver, his sister-in-law, and no one else. D. M. McIver signed the agreement as a witness. There is no evidence that the plaintiff was not then in full possession of his mental faculties and did not fully understand what he was doing.

The plaintiff says that at this meeting in Sanford, when the conditional release agreement, recited above, was signed, he had a very pleasant conversation with Baldwin, the defendant's agent, and that Baldwin said that as soon as he, Aderholt, was able he could get his position back. Plaintiff says "that is all that passed."

The negotiations for a settlement, which culminated in the execution of the release agreement, were open and fair and there is nothing in the evidence which tends to show that any unfair advantage was taken of the plaintiff. He signed the agreement freely and voluntarily. The final release was signed seventeen days after the execution of the conditional release agreement. According to the undisputed facts, Aderholt met Baldwin in Raleigh on 22 July and received a voucher for $300 and executed the final release in the following words: "For and in consideration of the sum of three hundred dollars ($300) to me paid, the receipt of which is hereby acknowledged, I, J. C. Aderholt, roadmaster, do hereby release and forever discharge the Seaboard Air Line Railway, and any and all railroads owned, leased, operated or controlled by it and its successors, from all claims and causes of action for or by reason of the injuries received by me while riding on freight train No. ......, injuring back, same parting, throwing me against seat and breaking ribs, on or about 5 April, at or near Aberdeen, N. C., while an employee of the Seaboard Air Line Railway; the consideration hereinbefore referred to being in full

compromise, satisfaction and discharge of all claims and causes of action arising out of the injuries and in exoneration of the railway from all liability by reason thereof."

Plaintiff says that he did not read this release; that it was "shoved" across the table to him, and he signed it. When asked if he knew its contents, he said: "No, not exactly. I knew it would have some features which I would object to, but I did not want to be contrary, and I knew if I did not sign it I could not go back to work at all." At the time this release was executed he received a voucher for $300, reciting that it was accepted in full settlement, satisfaction and discharge of all claim whatsoever for the injuries complained of. This voucher was read and signed by the plaintiff at the time he secured the money from the bank in Raleigh. It appears from the facts recited, which were not in dispute, that the plaintiff read the conditional release agreement at the time he signed it and knew its contents, and that he knew the contents of the voucher, but he did not read the final release. However, the fact that he did not read this release cannot avail him. He could read; he had the opportunity to do so, and there are no circumstances connected with the signing of this instrument which relieved him of the duty to read it. He is charged, therefore, with knowledge of its contents. *Dorsett v. Mfg. Co.,* 131 N. C., 259; *Dellinger v. Gillespie,* 118 N. C., 737; *Griffin v. Lumber Co.,* 140 N. C., 514.

The plaintiff admits the execution of these releases and the collection of the $300, the consideration recited therein, but says there was a contemporaneous agreement to give him employment as long as he proved satisfactory. It is true that there is evidence that he and defendant's agent, Baldwin, talked about plaintiff's continuing in the defendant's employment, and one of plaintiff's witnesses, Miss McIver, his sister-in-law, testified that Baldwin said the company would be glad to give plaintiff his position back "as long as he wanted it." The witness said that this conversation took place at the time the conditional release was executed. It is also in evidence that Aderholt himself calculated the amount he would accept in settlement and that amount was placed in the agreement as the sole consideration. There is no evidence that he was induced by any device to sign this agreement, but did so voluntarily. A period of more than two weeks, in which to consider the effect of his act, elapsed before he was called to execute the final release of his claim for damages. When this release was presented to him for his signature, nothing was said about any

additional consideration or re-employment. He knew then the full effect of his act, and he accepted the consideration of $300, and, in addition to executing the release, signed a receipt which recited that this amount was accepted in full satisfaction of his claim for injuries.

In a case involving facts strikingly similar to these, the Supreme Court of Kansas held that: "Such a contract, made without fraud in its execution, full and complete in its terms, unambiguous, reasonable and plain, but containing no agreement for future employment of the releasor, cannot be supplemented by parol proof of such an agreement, claimed to have been made in the negotiations concluded by the release, even though it be asserted that such agreement was the inducement for making the release." *Vanordstrand v. Railway,* 67 Kan., 387.

In his charge his Honor properly instructed the jury that there was no evidence to warrant them in finding that Aderholt, when these papers were signed, did not have sufficient mental capacity to know what he was signing. It appears that he was fully aware of what he was doing; he was not coerced in any way, and we must hold that in accepting $300, which was a sufficient consideration to support the release, and in executing the papers recited above, plaintiff has surrendered and released his right to maintain an action for his injuries, and, in the absence of evidence of fraud in the procurement of the release, the action should have been dismissed.

When we consider the evidence that plaintiff relies upon to establish the fraudulent intent of the defendant to promise him employment in order to secure the release and then discharge him, we are forced to the conclusion that such evidence is not sufficient to be submitted to the jury. After the final release was executed, plaintiff continued in defendant's employment until the following February, and was then discharged by the superintendent in charge of the division of the railroad on which plaintiff was engaged, and the superintendent gave as the cause of the discharge, plaintiff's failure to keep his track in condition. In fact, plaintiff himself says that he had difficulty in getting the track in good condition, due to the scarcity of hands. There is nothing in the evidence which tends to show that the superintendent, who discharged plaintiff, knew of the settlement that had been made with him. The superintendent said that he did not know of it and had no connection with the division on which Aderholt was employed until the September after the settlement was made, which was in July. The de-

fendant's agent, R. M. Baldwin, who procured the execution of the releases, was a claim adjuster, and testified that he had no authority to hire or discharge employees.

As we have said in *Byrd v. Express Co.,* 139 N. C., 273, there must be legal evidence of the fact in issue and not merely such as raises a suspicion or conjecture in regard to it. The rule is thus stated in *S. v. Vinson,* 63 N. C., 335 : "We may say with certainty that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere con-. jecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury." *Young v. R. R.,* 116 N. C., 932. In *Crenshaw v. R. R.,* 144 N. C., 321, we quoted with approval the language of *Justice Maule* in *Jewell v. Parr,* 13 C. B. (76 E. C. L.), 916 : "The question for the judge is not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established." The evidence in the case before us does not rise to this standard, and there was error in submitting it to the jury. The motion of nonsuit should have been sustained.

Reversed.