ADAMS, J., not sitting.
The plaintiff brought an action against the Southern States Finance Company (hereinafter called Finance Company) and the other defendants. At the close of the plaintiff's evidence the court below ordered that the action against the individual defendants be nonsuited. The present controversy on appeal is solely between the plaintiff and defendant Finance Company.
The plaintiff's action against the Finance Company is for actionable fraud. The material allegations of the complaint:
"On 9 May, 1923, at Laurinburg, N.C. the defendant corporation, through J. J. Quinby, signed a contract of sale for 4,000 shares of common stock in the Southern States Finance Company for the sum of *Page 712 
$10,000, with James L. McNair, the agent and representative of plaintiff, who acted in said transaction for and in the name of the plaintiff; said contract was not in the form nor did it contain the provisions required by the laws of North Carolina.
On 12 May, 1923, the defendant corporation, by the defendant, J. R. Cherry, as secretary and treasurer, drew upon plaintiff for $10,000 as the purchase price agreed upon for said stock, which said draft was paid.
"The sale of said stock to the plaintiff was conducted upon plaintiff's behalf entirely through his agent, James L. McNair, and the circumstances of said transaction were as follows:
"The defendant, Quinby, approached the said agent of plaintiff and represented and stated to him that the Southern States Finance Company was a new corporation then being organized by Tom G. Taylor Company for the Finance Company; that none of its common stock had been sold or disposed of or would be sold or disposed of for less than $2.50 per share; that all provisions of law with reference to organization and sale of stock had been complied with, and no greater amount had been used or would be used in organization, promotion and sales expense than allowed by law, and contracting and agreeing that in the event of his failure to dispose of said stock, at a large profit to plaintiff, within six months, plaintiff would be repaid the sum of $10,000 with interest from 9 May, 1923, each of which representations and statements was false to the knowledge of said Quinby and his codefendants; the truth being as defendants well knew, that the Southern States Finance Company had been duly organized for more than two years; that large quantities of its common stock had been given away as bonus, and sold at prices much less than $2.50 per share; said corporation was not a new company being organized by Tom G. Taylor Company; greatly in excess of the amount allowed by law had been expended and was being expended in stock sales, organization and promotion expense.
"Said stock was practically worthless, and still is practically worthless; the statute constituting the `Blue-Sky Law' of North Carolina had not been complied with; the stock was not resold to the profit of the plaintiff, and on his demand the defendant corporation failed to take up said stock and repay to him the purchase price with interest thereon. All of aforesaid representations were made with knowledge of their falsity, with intent to deceive and actually did deceive the plaintiff, through his said agent, and caused him to purchase said stock."
The defendant, Finance Company, denied any fraud in the transaction; denied that it had not complied with the "Blue-Sky" statutes of the State, and alleged:
That on or about 9 May, 1923, plaintiff, John F. McNair, by J. L. McNair, his agent, executed and delivered to Tom G. Taylor a certain *Page 713 
written contract for the purchase of 4,000 shares of the common stock of the corporate defendant, for which he contracted and agreed to pay the sum of $10,000, 40 per cent of which was to be paid and the remaining 60 per cent in notes, bearing 6 per cent interest, payable to the Southern States Finance Company and due respectively in three, six and nine months after date thereof; that in the said written contract as aforesaid it was specifically set forth in part and expressed as follows:
"It is understood and agreed that this contract contains the entire agreement between the purchaser, whose signature appears below, and Tom G. Taylor Company, and no agent, representative or any other person has any power to change, modify or make any new conditions, statements, promises or agreements whatever."
That J. J. Quinby mentioned by plaintiff was not an agent of corporate defendant, or of said Tom G. Taylor, nor was said J. J. Quinby authorized to make any representation or contract in regard to or binding upon defendants, and defendants had and have no knowledge of any alleged act or thing done or said by said Quinby, and are not liable thereon.
That defendants are advised and believe that plaintiff is bound by terms of written contract of purchase before mentioned, and is estopped to deny the terms thereof or controvert same by oral testimony, and defendants specifically plead such estoppel in bar of any recovery herein.
The issues submitted to the jury and their answers thereto were as follows:
"1. Did the plaintiff, on 9 May, 1923, subscribe for 4,000 shares of stock in the Southern States Finance Company for the sum of $10,000, and pay for same on 13 May? Answer: Yes.
"2. Was such subscription procured by means of misrepresentation and fraud, as alleged in the complaint? Answer: Yes.
"3. At the time of said sale was the Southern States Finance Company duly licensed to sell stock in the State of North Carolina? Answer: No.
"4. Did the subscription card signed by the plaintiff contain the language required by section 6367 of the Consolidated Statutes? Answer: No.
"5. Did the defendant, Tom G. Taylor, make the sale of said stock through his agent, J. J. Quinby? Answer: Yes.
"6. Was the said J. J. Quinby, at the date of sale to plaintiff, a duly licensed agent to sell said stock under the laws of North Carolina? Answer: No.
"7. Is the defendant, Southern States Finance Company, indebted to plaintiff, and if so, in what amount? Answer: $10,000 from 13 May, 1923." *Page 714 
Judgment was rendered on the verdict and the Finance Company appealed to the Supreme Court. There are thirty-seven assignments of error in the record. Most of the immaterial ones, under the Rules of this Court, are abandoned in the Finance Company's brief. The material ones and necessary facts will be considered in the opinion.
Succinctly, the main material contentions of plaintiff and defendant, the Finance Company, are: On the part of plaintiff: That prior to 9 May, 1923, J. J. Quinby came to James L. McNair and represented that he was agent of Tom G. Taylor, who was the duly appointed agent of the Finance Company, to organize to sell its preferred and common stock. James L. McNair entered into the negotiations with Quinby and purchased the stock on 9 May, 1923, for his father, the plaintiff. The false and fraudulent representations which he relied on and which induced him to purchase the 4,000 shares of common stock of the company are: (1) That it was a new corporation then being organized by Tom G. Taylor Co.; (2) that none of the common stock had been sold or disposed of or would be sold or disposed of for less than $2.50 per share; (3) that all the provisions of law with reference to organization and sale of stock had been complied with; (4) contracting and agreeing that in the event of his failure to dispose of the stock at a large profit, within six months, plaintiff would be repaid the sum of $10,000 with interest from 13 May, 1923; (5) all of the representations made by Quinby, agent of Finance Company, were false, with knowledge of their falsity, with intent to deceive and actually did deceive plaintiff, and he was thereby induced to buy the stock; that plaintiff offered frequently to return the stock, as soon as he discovered the fraud, and demand the payment of the purchase price and interest. Plaintiff's evidence abundantly tended to support these contentions.
On the part of defendant, Finance Company: (1) The Finance Company admitted the contract for the purchase of 4,000 shares of the common stock was executed on 9 May, 1923, by James L. McNair, for plaintiff; denied all allegations of fraud; that the books of the corporation show there was no fraud, and that any representation made was true; (2) that in the agreement of purchase of the stock by the plaintiff was the following: "It is understood and agreed that this contract contains the entire agreement between the purchaser, whose signature appears below, and Tom G. Taylor 
Company, and no agent, representative *Page 715 
or any other person has any power to change, modify or make any new conditions, statements, promises or agreements whatever." (3) That J. J. Quinby was not the agent of the Finance Company or Tom G. Taylor, and was not authorized to make any representation or contract binding on Finance Company, and it had no knowledge of any alleged act or thing done or said by Quinby and is not liable thereon; (4) that plaintiff is bound by the terms of the written contract and estopped to deny them; "that J. L. McNair was induced to enter into this contract, for that he telephoned Jas. O. Walker, president of the company, and Walker replied that he was going to give the matter his personal attention, and at least one-half of his time. The defendant contends that that was one inducement to enter into the contract, and that another inducement was at the time he entered into the contract for the purchase of the stock and before he ever entered into it he had a contract and agreement with Tom G. Taylor Company, that they would sell stock for him, for which he was paying ten thousand dollars, would sell it in six months for him for thirty thousand dollars, and upon failure to do that that they would refund him his money, the ten thousand dollars that he had paid for the stock with three hundred dollars, being the interest for six months, from 13 May, making ten thousand and three hundred dollars."
The defendant introduced no evidence, but relied, in part, on plaintiff's evidence and cross-examination of plaintiff's witnesses and the written evidence in the case, to establish its defense.
The record is voluminous, but from a thorough digest we think the only material assignments of error to be considered are to the allegations and proof as to actionable fraud and the agency of J. J. Quinby. These go to the very heart of the action and on which the defendant, Finance Company, predicates its motion, under C.S., 567, at the close of the plaintiff's evidence for judgment as in case of nonsuit.
The issue as to fraud: "Was such subscription procured by means of misrepresentation and fraud as alleged in the complaint?"
The court below charged as follows: "The burden of this issue, gentlemen, is upon the plaintiff to satisfy you by the greater weight of the evidence that such subscription was procured by means of misrepresentation and fraud. Fraud may be defined as `any trick or artifice where a person by means of false statements, concealments of material facts or deceptive conduct which is intended to and does create in the mind of another an erroneous impression concerning the subject-matter of a transaction whereby the latter is induced to take action or forbears from acting with reference to a property or legal right he has which results to his disadvantage and which he would not have consented to had the impression in his mind not been created and in accordance with the real *Page 716 
facts.'" On this issue the court below states that the defendant asked for the following instructions, which in obedience to the request were given: "The burden is on the plaintiff to prove by the greater weight of the evidence that Quinby not only made such representations, but also made them with the knowledge of their falsity or recklessly and wilfully with intent to deceive and defraud the plaintiff, and unless the plaintiff has proved this by the greater weight of the evidence, you will answer the second issue No. That if the jury should find that the plaintiff was induced to subscribe for said stock by the representation that James O. Walker was president of the company and would devote one-half of his time to the affairs of the company you are instructed to answer the second issue No."
It has been hard for the courts to lay down any exact definition of fraud or rule to apply to the varying cases, but to fit the contested facts in the present controversy, we think the definition as laid down by the court below correct. In fact, the Finance Company made no exception to the rule as to fraud as charged by the court. Evans v. Davis, 186 N.C. 43;Machine Co. v. Feezer, 152 N.C. 516; Pate v. Blades, 163 N.C. 267;Massey v. Alston, 173 N.C. 215; Bank v. Yelverton, 185 N.C. 318;Sanders v. Mayo, 186 N.C. 109; Oil Co. v. Hunt, 187 N.C. 159; IndemnityCo. v. Tanning Co., ibid., 190; Wolf Co. v. Mercantile Co., 189 N.C. 322;Furst v. Merritt, 190 N.C. 397.
The defendant, Finance Company, relies on Pritchard v. Dailey,168 N.C. p. 332. It is there said: "The material elements of fraud, a commission of which will justify the court in setting aside a contract or other transaction, are well settled. First, there must be a misrepresentation or concealment; second, an intention to deceive, or negligence in uttering falsehoods with the intent to influence the action of others; third, the misrepresentations must be calculated to deceive and must actually deceive; and, fourth, the party complaining must have actually relied upon the representations." In that case the Court said the representations of the defendant seemed to be what are called "promissory representations" or "opinion representations" — not so in the present case. In thePritchard case, the Court says the evidence fails to show that the plaintiff relied upon the representations of the defendant, but his own evidence showed he relied on the paper-writing he had written and mailed to defendant and demanded the execution of it or the return of his check. Defendant complied with the demand. The evidence showed also that plaintiff's act was voluntary and in recognition of the contract.
Bispham's Equity (9 ed.), sec. 211, says: "The representation must not be an expression of intention merely. A man has no right to rely upon what another says he intends to do, unless, indeed, the expression *Page 717 
of intention assumes such a shape that it amounts to a contract, when, of course, the party will be bound by his engagement and for the breach of which the other side has, ordinarily, an adequate remedy at law. But if apromise is made with no intent to perform it, and merely with a fraudulentdesign to induce action under an erroneous belief, or if a representationamounts to a statement of fact, although dependent upon future action, ineither case there is ground for equitable relief." Massey v. Alston, supra, p. 219.
12 R. C. L., p. 240, states it thus: "The essential elements required to sustain an action for deceit are that the representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that, it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. All of these ingredients must be found to exist, and the absence of any one of them is fatal to recovery; though under the rulings of some courts the rule is generally relaxed as to knowledge and intent, where the relief sought is rescission. . . . Thus, fraudulent representations to avoid a contract need not be such as would sustain an indictment for false pretenses. So, if the original transaction is valid it cannot be rendered fraudulent by subsequent events, as by the nonperformance of a contract,unless there is a coexisting intention not to perform."
Under the facts and circumstances of this case, the court below was fully warranted in submitting the facts to the jury and the charge as to fraud was in accordance with the law.
The Finance Company contends: "That the real inducement for execution of subscription contract by plaintiff was the execution of contract with him by Tom G. Taylor Company, and that if defendant has failed to observe any requirement of law the plaintiff is in pari delicto and is not entitled to equitable relief."
The court below fully met the first part of contention and charged the jury: "That if the jury shall find from the evidence and by its greater weight that the plaintiff was induced to subscribe for said stock by the execution of the contract to resell entered into with Tom G. Taylor 
Company, that you are instructed to answer the second issue No."
The action here is for fraud and deceit. Plaintiff did not come under the provision of C.S., 6367, in the stock agreement with Tom G. Taylor 
Company. That section provides organizers or promoters or their agents, should put in the contract of subscription or sale a certain provision. The principle of pari delicto does not apply here.
The next contention of the Finance Company is: "The plaintiff having received the stock on 13 May, 1923, and `slept' until 2 December, *Page 718 
1924, is guilty of laches and is not entitled to equitable relief." In answer to this contention, plaintiff says that the court below stated "In reply to this contention, gentlemen of the jury, the plaintiff contends, and Jas. L. McNair testified, that he did not discover that these representations were false until just a short time — the latter part of 1924 — just a short time before the commencement of this action, and that he began suit immediately after discovering that fraud had been perpetrated upon him and that he was guilty of no laches; that he demanded that they cancel the contract and return his money, and they refused to do so, whereupon he brought the suit within a few days, or a very short time after the discovery by him that the representations made by Quinby to him were false." In the charge of the court in regard to this aspect, the court below said: "Unless the plaintiff has failed to satisfy you, gentlemen of the jury, that he has not been guilty of laches or negligence in rescinding this contract, the court charges you, gentlemen of the jury, that it is the duty of the plaintiff, if he intended to rescind this contract, to give the defendant notice of such intention within a reasonable time after discovering the fraud that had been perpetrated upon him, if you find that there was fraud perpetrated upon him, and if he failed to do so within a reasonable time after the discovery of the fraud and was guilty of laches, then, gentlemen of the jury, the plaintiff cannot recover and you would answer this issue Nothing. The court instructs you that the plaintiff is not permitted by law to delay in the enforcement of any remedy he may have for the rescission of the contract, and if you find he has been guilty of unreasonable delay or laches in electing to rescind you will answer the seventh issue Nothing." This was a question of fact on the evidence, and the court below fully complied with the law in the charge.
"No act of a party will amount to a confirmation of a fraudulent transaction, or acquiescence therein, unless done with full knowledge of the fraud and while he is free from its influence. Plaintiff's ignorance of his rights also, as a general rule, negatives any laches on his part, especially where there has been no change in the situation of the parties in respect to the matter in which the relief is sought. It is sufficient that suit is brought without unreasonable delay after discovery of the grounds for rescission." 9 C. J., p. 1205.
In May v. Loomis, 140 N.C. p. 359, the Court says: "In order to rescind, however, the party injured must act promptly and within a reasonable time after the discovery of the fraud, or after he should have discovered it by due diligence; and he is not allowed to rescind in part and affirm in part; he must do one or the other. And as a general rule, a party is not allowed to rescind where he is not in a position to put the other in statu quo by restoring the consideration passed. Furthermore, *Page 719 
if, after discovering the fraud, the injured party voluntarily does some act in recognition of the contract, his power to rescind is then at an end. These principles will be found in accord with the authorities. Bishop on Contracts, secs. 679, 688; Beach on Contracts, sec. 812; Page on Contracts, secs. 137, 139; Clark on Contracts, pp. 236, 237; Trust Co. v. Auten,68 Ark. 200; Parker v. Marquis, 64 Mo., 38."
The Finance Company contends: "That J. J. Quinby, the person alleged by plaintiff to have made the fraudulent misrepresentations was not the agent of defendant, and if any such representations were made by Quinby they were unauthorized, without the knowledge or consent of defendant, and plaintiff was not entitled to rely on them, or prove them as a basis of recovery from defendant."
It is said in Waggoner v. Publishing Co., 190 N.C. p. 831: "With full knowledge of all the circumstances, the defendant has received and still holds the money fraudulently obtained by its agent from the plaintiff. The defendant will not be permitted to repudiate the act of its agent as being beyond the scope of his authority, and at the same time accept the benefits arising from what he has done while acting in its behalf. Starkweather v.Gravely, 187 N.C. 526. It is a rule too well established to admit of debate that if a principal, with full knowledge of the material facts, takes and retains the benefits of an unauthorized act of his agent, he thereby ratifies such act, and with the benefits he must necessarily accept the burdens incident thereto or which naturally result therefrom. The substance of ratification is confirmation after conduct. 2 C. J., 467. It is also a settled principle of ratification that the principal must ratify the whole of his agent's unauthorized act or not at all. He cannot accept its benefits and repudiate its burdens. Bank v. Justice, 157 N.C. p. 375."
We said in Hunsucker v. Corbitt, 187 N.C. p. 503: "Admissions by agents, made while doing acts within the scope of the agency, and relating to the business in hand, are admissible against the principal when such admissions may be deemed a part of the res gestae, but such admissions are not admissible to prove the agency; the agency must be shown aliunde before the agent's admissions will be received." Lockhart's Handbook on Evidence, sec. 154, and numerous authorities.
The evidence on this aspect, Jas. L. McNair testified: "Well, I don't recall his exact language; he said that Tom G. Taylor Company, of which he was a partner, were organizing or were organizers of the Southern States Finance Company, and as soon as a certain amount of stock was sold, that the organization would begin business, and he told me who some of the officers of the organization would be. He said Mr. J. O. Walker would be president of the company, and I don't remember all of the officers; he mentioned Rhyne and Dr. Ashcraft as directors. *Page 720 
In consequence of what he told me I called Mr. Walker on the telephone. I know Mr. Walker's voice. Q. What conversation took place between you and J. O. Walker? A. I told Mr. Walker over the phone that Quinby was down here
wanting to sell some stock in the Southern States Finance Company, which he said they were getting up in Charlotte to do a financing business, and he represented to me that Mr. Walker would be active president, and I asked Mr. Walker if that was true, and Mr. Walker said he was at that time — that it happened that at that time he was right much busy with his campaign; that they were having an election in Charlotte and he had been right busy in the campaign, but that was practically over and he expected he would give it half of his time; one-half of the day to the mayor's office, and half a day to the office of the Southern States Finance Company. I told him Quinby was there wanting to sell me the stock."
Counsel for plaintiff read a number of entries from the stock book of defendant, Finance Company, to the jury, one with the entry "John F. McNair, Laurinburg, N.C. 12 May, 1923, four thousand shares common certificate 1128, ten thousand, on the credit side 16 May, cash book four hundred, 16 May, cash book nine thousand and six hundred." It was in evidence that Dr. Ashcraft became vice-president and in active charge of the company.
Dr. J. E. Ashcraft and Mr. Tolle, officers of the Finance Company, called on Jas. F. McNair, at Laurinburg, who testified: "At the time Ashcraft and Tolle were here I showed them this Tom G. Taylor contract. I told them who sold the stock to me, and the contract showed. I don't recall how long we were conversing, one to three hours — they were in the office some time. I told them I had bought this stock from Mr. Quinby and the agreement, and told them the representations that Quinby made to me. I told them Mr. Quinby said that the company was being formed and the stock had not been sold to any one for less than two dollars and fifty cents, and they would be selling the stock for ten dollars a share. When I told Dr. Ashcraft and Mr. Tolle the representations that Quinby had made to me they told me they would let me know about taking the stock up; they would let me know right away whether they would give the money back or not, and after they went back I got that letter. They didn't disavow responsibility for Quinby's statement; they didn't say either way."
The issue of agency: "Did the defendant, Tom G. Taylor, make the sale of said stock through his agent, J. J. Quinby?"
The court below on this issue charged: "The burden of this issue, gentlemen, is upon the plaintiff to satisfy you by the greater weight of the evidence that this sale was made by Tom G. Taylor, through his agent, Quinby. The contract, gentlemen of the jury, has been introduced here *Page 721 
before you wherein the following language is used: `I hereby purchase from Tom G. Taylor Company four thousand shares of the common stock of the company.' The plaintiff insists that that should satisfy you that this sale was made by Tom G. Taylor through his agent, J. J. Quinby; plaintiff insists, gentlemen, that the evidence shows that Quinby was acting as the agent, and that it was known to the company he was acting as their agent, so, gentlemen of the jury, if you are satisfied from this evidence, and by its greater weight, that the sale was negotiated through Tom G. Taylor, by his agent, Quinby, why then you will answer the fifth issue Yes. If you are not so satisfied, you will answer it No."
Dr. Ashcraft and Tolle, officers of the Finance Company, were informed by Jas. L. McNair of the fact that the stock was purchased through Quinby and the representations Quinby made to him. They told McNair that they would let him know about taking the stock up. They did not disavow responsibility.
1 R. C. L., p. 478, backed by a wealth of authorities, says: "Intimately connected with admissions that are implied by the acts or conduct of the party are admissions by silence or acquiescence. If a statement is made in the hearing of another, in regard to facts affecting his rights, and he makes no reply, it may be a tacit admission of the facts stated." State v.Evans, 189 N.C. 235.
We think there was sufficient evidence to be submitted to the jury aliunde of Quinby being an agent of Tom G. Taylor and the Finance Company. (It is admitted that Taylor was.) The evidence of plaintiff: (1) The stock sold by Quinby to plaintiff was issued by the Finance Company and the money received by it; (2) the plaintiff through his agent, Jas. L. McNair, informed Jas. O. Walker, acting president of the Finance Company, that Quinby was trying to sell him stock in the company; (3) the statement of Jas. L. McNair that he informed the two officers of the Finance Company in regard to facts affecting the rights of the company — the representations of Quinby. No reply from the officers. They remained silent. We think all these facts sufficient to justify the court below in its charge. The agency being established by evidence aliunde, the testimony of Jas. L. McNair that Quinby told him he was agent, etc., was competent. From the view we take of this action, as to the first, second and fifth issues, it is not necessary to discuss the interesting questions raised on the other issues.
The principle laid down in Ginsberg v. Leach, 111 N.C. p. 15, is as follows: "The Supreme Court will not consider exceptions arising upon the trial of other issues, when one issue, decisive of the appellant's right to recover, has been found against him by the jury." Hamilton v. Lumber Co.,160 N.C. 52; Beck v. Wilkins-Ricks Co., 186 N.C. 215; Sams v. Cochran,188 N.C. 734. *Page 722 
The court below tried the case with care and caution.
The other positions taken by the able counsel for defendant on the argument and in the brief, we do not think raises any novel or new proposition of law, and are not material for the determination of the case.
The case is a simple action of actionable fraud. The questions of fact constituting the fraud were for the jury to determine. The charges of fraud were made and abundant evidence, if believed, to sustain them. The probative force was for the jury — not us. The issues were found for plaintiff. There was sufficient evidence to be submitted to the jury, and the overruling of the motion made by defendant, Finance Company, for judgment as in case of nonsuit, by the court below, was proper. The Finance Company introduced no evidence. The court below gave the contentions of both parties clearly and fairly. The law was applied to the facts. We see no error in law to disturb the verdict.
No error.
ADAMS, J., not sitting.