Civil action in tort to recover damages for personal injuries resulting from an automobile collision and to vacate and annul a release alleged to have been procured by fraud.
On 28 January, 1940, about 4:30 p.m., 4 automobiles were proceeding westwardly on the Greensboro-Winston-Salem highway. Snow had been removed from the hard surface portion of the highway and was banked on the shoulders of the road. The hard surface or traveled portion of the road was covered by a thin coating of ice which was melting.
The plaintiff and her husband and child were riding on the back seat of the third car. Defendants Heath were on the fourth car, which belonged to defendant Nona Heath. J. C. Heath, her husband, was driving.
The front car attempted to turn into a filling station. This caused the second car to stop suddenly. The driver of the third car, seeing the situation, put on brakes and in order to prevent a collision cut the front of his car into the snow bank. The Heath car then skidded into the car occupied by plaintiffs striking it with such force that she, her husband and child were thrown to the foot of the automobile. As a result plaintiff's sacroiliac joint was dislocated, her pelvic bone was fractured, her collar bone and one or more ribs were broken and other injuries were inflicted.
On 20 June, 1940, plaintiff and her husband executed and delivered to agents of the corporate defendant, liability insurance carrier for the defendant Nona Heath, three releases. One in consideration of $1,975.00 released all claims of plaintiff; one in consideration of $25.00 released all claims for injuries to the child and the third was to cover medical and other expenses incurred to that date in the sum of $174.00.
On 12 July, 1941, plaintiff instituted this action. The complaint states two causes of action. The first is for damages proximately resulting from the alleged negligent manner in which defendant J. C. Heath operated the automobile of the defendant Nona Heath. The second is for damages for the wrongful conduct of defendants in procuring the execution of the release by plaintiff, which conduct plaintiff alleges was pursuant to and in furtherance of a conspiracy entered into between defendants.
When the cause came on to be heard the court, on motion of defendants made at the conclusion of the evidence for plaintiff, entered judgment of nonsuit. Plaintiff excepted and appealed.
If the release is valid it is an effective bar and plaintiff may not proceed on either cause of action. Hence, we may pass the question of the sufficiency of the evidence on the issue of negligence without decision and come directly to the vital and decisive questions presented. (1) Has plaintiff offered any evidence tending to show that she was induced to sign the release by the fraud of the defendants; and (2) if so, has she by her conduct, notwithstanding the fraud, ratified the same?
A release executed by the injured party and based on a valuable consideration is a complete defense to an action for damages for the injuries and where the execution of such release is admitted or established by the evidence it is necessary for the plaintiff to prove the matter in avoidance. Aderholt v. R. R., 152 N.C. 411, 67 S.E. 978; Butler v.Fertilizer Works, 193 N.C. 632, 137 S.E. 813; Sherrill v. Little,193 N.C. 736, 138 S.E. 14. Hence, as plaintiff pleads the release and acknowledges its execution both in her pleadings and in her testimony, the burden is on her to establish the fraud alleged and relied on by her to invalidate the instrument.
What is fraud? No precise or all-inclusive definition has or can be given. Yet, to establish actionable fraud it is generally recognized that in all cases certain essential facts must appear. These are: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) and which does, in fact, deceive; (5) to the hurt of the injured party. McIntosh, Cases on Contract 2d, XXXI.
The material elements of fraud, a commission of which will justify the court in setting aside a contract or other transaction, are well settled. First, there must be a misrepresentation or concealment. Second, an intent to deceive or negligence in uttering falsehoods with intent to influence the acts of others. Third, the representations must be calculated to deceive and must actually deceive. And, fourth, the party complaining must have actually relied upon the representations. Pritchard v. Dailey,168 N.C. 330, 84 S.E. 392; Bolich v. Ins. Co., 206 N.C. 144,173 S.E. 320; McNair v. Finance Co., 191 N.C. 710, 133 S.E. 85; 12 R. C. L., 239, sec. 10.
The conditions under which representations as to material facts in the course of a bargain may be made the basis of an action for deceit as a general proposition are well stated in Pollock on Torts (7d), 276, as follows: "To create a right of action for deceit there must be a statement made by the defendant, or for which he is answerable as principal, and with regard to that statement all the following conditions must concur:
"(a) It is untrue in fact. *Page 473 
"(b) The person making the statement, or the person responsible for it, either knows it to be untrue, or is culpably ignorant (that is, recklessly and consciously ignorant) whether it be true or not.
"(c) It is made to the intent that the plaintiff shall act upon it, or in a manner apparently fitting to induce him to act upon it.
"(d) The plaintiff does act in reliance on the statement in the manner contemplated or manifestly probable, and thereby suffers damage."
It must be a false representation of fact materially affecting the value of the contract and which is peculiarly within the knowledge of the person making it and in respect to which the other person in the exercise of proper vigilance has not an equal opportunity of ascertaining the truth. Smith on Fraud, sec. 3. See also Whitehurst v. Ins. Co., 149 N.C. 273;Cooper v. Schlesinger, 111 U.S. 148; 28 L.Ed., 382; Kerr on Fraud and Mistake, p. 68; 23 R. C. L., 395, sec. 24, 396, sec. 25.
It is not always necessary in order to establish actionable fraud that a false representation should be knowingly made. It is well recognized with us that under certain conditions and circumstances if a party to a bargain avers the existence of a material fact recklessly or affirms its existence positively when he is consciously ignorant whether it be true or false he must be held responsible for a falsehood. Plaintiff must establish either positive fraud or that she was deceived and thrown off her guard by false statements designedly made at the time and that such statements were reasonably relied upon by her. Butler v. Fertilizer Works, supra. False assurances and statements of the other party may, of themselves, be sufficient to carry the issue to the jury when there has been nothing to arrest the attention or arouse suspicion concerning them. Butler v.Fertilizer Works, supra; McCall v. Tanning Co., 152 N.C. 648,68 S.E. 136; Whitehurst v. Ins. Co., supra; Bank v. Yelverton, 185 N.C. 314,117 S.E. 299.
Applying these generally recognized principles to the facts of this case we are constrained to hold that plaintiff has offered no sufficient evidence of fraud in the procurement of the release to justify the submission of an issue to the jury. It fails to induce the conclusion that the parties to the release did not deal at arm's length.
Her only allegations of fraud are these: that defendant caused and procured her to accept the sum of $1,975.00 as compensation for the injuries sustained by her "representing to plaintiff and to her husband that her injuries were only temporary, and upon definite assurances by them that plaintiff was going to be all right. . . . The said Greene always insisting that plaintiff's injuries were of a temporary character. . . . And insisted that plaintiff's injuries were only of a temporary character" which induced plaintiff "to believe that her injuries were of such nature that she would, in a reasonable time, fully recover therefrom *Page 474 
without any serious and permanent results and without further hospitalization, medical or other expenses," and that she accepted settlement and signed the release "on the assurance that her said injuries were temporary and not permanent and that she was soon going to be all right."
The substance of plaintiff's testimony in support of these allegations may be briefly stated.
One Chapman, an agent of the corporate defendant, called on her shortly after the accident. He was seeking a statement as to how the accident occurred. Its agent Greene next went sometime thereafter. He inquired as to her condition but neither made nor requested a proposition of settlement. Altogether he made six trips. On the third visit Greene inquired whether plaintiff and her husband had decided what they wanted to do. He received a negative answer. He asked about plaintiff's condition and talked as if he thought her injuries were only temporary. On the fourth trip he wanted to talk settlement but plaintiff's husband told him she was in no condition to talk settlement. On his sixth trip the releases were signed. On none of his visits, except the last, did he press for settlement. On one occasion he proposed a settlement for $800.00 and expenses and suggested that plaintiff consult Dr. Register, a bone specialist, to ascertain her condition. She went and the corporate defendant paid for this trip. Dr. Maness, plaintiff's family physician, was along and then turned the case over to Dr. Register who thereafter treated her, both before and after the releases were signed. Dr. Maness was also consulted and prescribed sedatives to relieve her pain. Greene, on his last several trips, "always assured me that my injuries were just temporary and that I would be all right . . . he assured me that Dr. Register said I would be all right; that it was just temporary . . . Mr. Greene said he represented the Lumbermen's Casualty Company and said he felt sure his company would take care of the expenses."
Some time in May plaintiff told Greene that she would take $2,500.00 if she was all right — would be all right. From that time on she was demanding this sum. She always said she would take this amount if she was all right. On June 18th or 19th Greene phoned and made an engagement to call and attempt to arrive at a settlement. He and one Young from the home office went on the afternoon of the 20th and remained two hours or more during which time they were talking settlement. They first offered $1,500.00 and the plaintiff countered with her offer to take $2,500.00 "if I am all right." Greene and Young, during the course of the negotiations, told plaintiff she was stubborn or determined. They said: "My injuries were temporary and as time went on I would be all right; that the doctor said I would be all right . . . they did not see why my injuries would make me have to go back to the *Page 475 
hospital any more . . . during that time we were discussing the matter of the settlement and that I would be all right. . . . If we went through court it would be long-drawn-out, lot of expense, doctors and lawyers to pay." She further testified: "I signed the papers because I thought I was going to be all right — they said I would be all right — that it was just temporary." No copy of the release was left with her.
Plaintiff's husband was present at the conference, participating in the negotiations and counseling and advising plaintiff. He testified that during the negotiations the agents (Young doing most of the talking) told them "Dr. Register had released her — that she was all right — there would be no other expenses, that she was released from the doctor and would not have to go back to him . . . her condition was temporary and that there was nothing to even think of being uneasy about and there was no reason why she should not go right along and in a month or two be in perfect health." He told them, "If you assure us that my wife is all right and Dr. Register has released her, which you say he has, we are willing to do what is right as far as anyone is concerned. . . . I told him we would take $2,500.00 if she was all right."
At the time of these negotiations plaintiff had not consulted an attorney. She was nervous and in considerable pain and was financially unable to engage in litigation. Due to her nervousness she could not wear a cast but was wearing a garment substituted therefor on the advice of Dr. Register.
Barring the lack of allegation in respect thereto, this evidence — particularly that of the husband — standing alone and unrelated to other facts, might well be said to constitute more than mere "sales talk." Positive representations were made. If untrue, it could be contended with force that they were calculated to deceive and did deceive plaintiff and threw her off her guard. Butler v. Fertilizer Works, supra.
But there are other pertinent facts appearing from the testimony of plaintiff which have their proper place in the picture and go to make up the whole story as delineated on this record.
Plaintiff is literate. It was her duty to read the instrument and it is presumed, in the absence of evidence contra, that she did so. Aderholt v.R. R., supra; Presnell v. Liner, 218 N.C. 152, 10 S.E.2d 639; Coltv. Kimball, 190 N.C. 169, 129 S.E. 406. She did, in fact, read it. It contained statements as follows:
"I/we hereby declare and represent that the injuries sustained may be permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that *Page 476 
I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.
"I/we understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to [be] construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability is expressly denied.
"This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.
"I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act."
Furthermore, the settlement was made approximately 5 months after plaintiff left the hospital. The parties were negotiating over a period of time. There were propositions and counter propositions. Plaintiff's husband was present counseling and advising her. "After we discussed the thing back and forth they finally came up to our figure and paid us what we asked when they came out that day." They knew that the instrument constituted a full and complete release. It was so stated in the instrument and the agents so advised them. The X-rays had been shown to her and the nature of her injuries explained. She was then suffering and was unable to walk unassisted. She was still wearing the garment substituted for the cast. On 19 June, after the appointment for the 20th had been made, she went to consult Dr. Register to ascertain what her condition was "to see whether or not he thought I was in such shape as to settle this case and to see what he said about it." He examined her on that occasion. Significantly, she did not testify as to what he told her; she did not examine him as a witness and she did not tender him for cross-examination. She was content to say that she chose to rely on the statements of a layman as to her condition rather than on those of her physician.
In addition, when her husband asked the agent in the presence of the plaintiff "if your wife was in the condition my wife is in would you even think about making a settlement?" He frankly replied: "No, sir, I would not."
If the representations relied on by plaintiff were true there is no element of fraud. If they were untrue she not only had adequate opportunity to ascertain the truth but she, in fact, availed herself of that opportunity. She went directly to the best source of information — the *Page 477 
same quoted by the agents — Dr. Register. She went for the specific purpose of ascertaining her condition. When she signed she knew that her claim was "doubtful and disputed"; that her injuries might be "permanent and progressive"; and that recovery therefrom was "uncertain and indefinite." She acted voluntarily, relying on her own knowledge and belief as to the extent and duration of her injuries, without being influenced by any statement or representation made to her. She so stated in writing at the time.
Under the circumstances here disclosed plaintiff is not in a position to contend successfully that she is the victim of fraud. The evidence is insufficient to support an inference that the parties were not dealing at arms length or that the agents of the corporate defendant, by false representations, misled and deceived plaintiff and induced her to execute a contract she otherwise would not have signed.
As we conclude that the record fails to disclose any sufficient evidence of fraud to be submitted to a jury, it is unnecessary for us to discuss the question of ratification debated in the briefs.
That the defendants Heath assert in their answer that they had no knowledge of the release prior to the institution of this action will not avail the plaintiff. She alleges that the corporate defendant was the liability insurance carrier for the Heaths and that the release was obtained for their protection. She was told at the time she signed that "it was to keep us from bringing suit against Mr. and Mrs. Heath." It injures to their benefit.
The judgment below is
Affirmed.