## RICHMOND v. ST. LOUIS SOUTHWESTERN RY. CO.

### Civ. A. No. 3253.

United States District Court
W. D. Louisiana, Shreveport Division.

Sept. 17, 1951.

Robert L. Richmond, Shreveport, La., for plaintiff.

Wilkinson, Lewis & Wilkinson and Vernon Woods, all of Shreveport, La., for defendant.

DAWKINS, Chief Judge.

This case is before the court on a motion for summary judgment by the defendant. The action is one for damages claimed for alleged breach of a contract of employment. Plaintiff bases his demand upon the provisions of the contract alleged to have been made between defendant and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, a labor union which was the representative of certain crafts in dealing with the railroad company. The question as to whether plaintiff was or was not within its terms is one which depends largely upon the facts to be developed. The petition quotes from the contract Article IV thereof, headed "Discipline and Grievances—Investigation" (Rule 29), reading as follows: "An employee who has been in the service more than sixty (60) days or whose application has been formally approved shall not be disciplined or dismissed without investigation, at which investigation he may be represented by an employee of his choice, or one or more duly accredited representatives. He may, however, be held out of service pending such investigation. The investigation shall be held within seven (7) days of the date when charged with the offense or held from the service. A decision will be rendered within seven (7) days after the completion of investigation. At a reasonable time prior to the hearing the employee shall be apprised of the precise charge against him in writing,"

and also Article V, entitled "Leave of Absence," to wit:

"Except for physical disability or. as provided in Rule 44 of this Article, leave of absence in excess of ninety (90) days in any calendar year shall not be granted unless by agreement between the Trustee and the duly accredited representatives of the employees.

"The arbitrary refusal of a reasonable amount of leave of absence to employees when they can be spared, or failure to handle promptly cases involving sickness or business matters of serious importance to the employees, is an improper practice and may be handled as unjust treatment under this agreement.

"An employee who fails to report for duty at the expiration of leave of absence shall be considered out of the service, except that when failure to report on time is the result of unavoidable delay, the leave will be extended to include such delay."

Plaintiff further alleges that he was employed by defendant on August 15, 1923, as "office clerk," and continued in its service in similar work until March 26, 1941, when he "was dismissed from the service effective March 11, 1941, for failure to satisfactorily perform his duties for the company." Petitioner then recites what he claims as the facts and circumstances connected with his said discharge, which he claims did not comply with said contract; that "on or about March 31, 1941, he protested his dismissal * * * and made written demand that he be reinstated * * * and on or about April 5, 1941, * * * complainant reported for work but was not permitted to serve * * *"; that he has never "been apprised of any precise charge against him * * *"; that no investigation or hearing, as required by the said contract, was ever made, notwithstanding several requests therefor. He alleges his discharge was "wrongful"; and at the date thereof his "monthly salary was $197.50 per month, but complainant is unable to set out with any certainty the amount of wages he would have earned * * * from the date of such wrongful discharge" because of several increases in

pay for the position which he occupied "since March 26, 1941." He demands the total sum of $25,000.

In Article 13 of the petition, plaintiff recites that because defendant refused to pay him the wages which he claimed, he "brought suit in the state court in March, 1942," under the provisions of Act. No. 150 of 1920, as amended by Act No. 138 of 1936, L.S.A.–R.S. 23:631, 23:632, requiring the payment of the wages of a discharged employee within twenty-four hours, said suit bearing No. 84513 on the docket of the State District Court for Caddo Parish; that it was "compromised on or about December 15, 1942, for the sum of $750.00"; he then concedes that "defendant is entitled to a credit in the amount due complainant for the period from March 26, 1941, to December 15, 1942, and complainant is entitled to all wages due him subsequent to December 15, 1942." The prayer is for "judgment in accordance with the terms of his contract with the defendant for all pay and wages lost by him for reasons of his wrongful discharge, with interest at the legal rate."

In its motion for summary judgment, defendant charges first, "there is no genuine issue as to any material fact," and as "a matter of law" it is entitled to judgment. The motion then pleads the compromise settlement and judgment in the state court as barring further action here and has attached thereto certified copies of plaintiff's petition in the state court as Exhibit A, the compromise settlement as Exhibit B, and the petition and order dismissing the said suit, marked Exhibit C. Defendant further averred the position in which plaintiff was employed was "expressly excluded from coverage under the contract * * *," quoting therefrom Article 1, Rule 1, Subsection B, wherein it is said:

"This agreement shall not apply to employees in:

\* \* \* \* \* \*

"General and Commercial Agencies."

Finally, defendant pleads the prescription of one, three and ten years, under Articles 3534, 3538 and 3544, respectively, of the Revised Civil Code of Louisiana. The motion to dismiss and for summary judgment is not supported by affidavit, but bears merely the certificate of counsel that copy had been mailed to plaintiff, who is his own lawyer of record. However, the exhibits attached thereto are properly certified by the state judge and clerk and therefore may be considered for what they appear to be.

In opposition to the motion, plaintiff filed an affidavit charging that the records in the state court attached to defendant's motion show that "the only subject matter of the suit was plaintiff's demand for unpaid wages due him at the time of his discharge and penalty for non-payment," made under said Act No. 150 of 1920 and the amendment thereof, and that "at the time of the execution of the compromise agreement, nor at any time prior or subsequent thereto, was any mention made, or discussion had, of complainant-affiant's claim for damages for wrongful discharge under the terms of his employment contract, and, that it was not intended by the parties to include the claim for damages for wrongful discharge in the compromise agreement settlement." Thereafter, the major portion of the affidavit is in substance a brief, citing the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., amendments and decisions interpreting the same. He further avers that under Article 3544 of the Civil Code and the contract with the union, his rights to sue did not accrue until seven days after his discharge on March 26, 1941. The claim here was filed on March 26, 1951, and served on the 27th of that month. The motion was submitted on briefs, without oral argument, on July 13, 1951, and on the 31st of that month, there was filed with the Clerk a document styled "Affidavit of General Agent, Shreveport, Louisiana" by defendant "in support of summary judgment."

Complainant has also attached to his brief filed August 6, 1951, "for the court's information and assistance," certified copies of certain correspondence between the said general agent of defendant and the complainant, together with photostatic cop-

ies of two checks dated, respectively, March 15, and April 1, 1941, by the defendant in favor of complainant. Other than being filed by the Clerk, after the case was submitted, there is nothing to make these documents part of the official record, and it would seem proper that if there is no question about their being considered, either a stipulation to that effect should be filed, or each attorney should write the Court, agreeing that they may be treated as part of the record. Ordinarily, additions are not thus informally made to records of cases after they have been submitted, except by consent of the parties. (Since dictating the above, attorneys for both sides have written the Court letters consenting that it may consider the documents thus informally placed in the record.)

In the suit in the state court, complainant alleged his employment at the salary of $197.50, and that he had been discharged as of March 11, 1941, while ill and unable to work, to the knowledge of defendant, and that small checks had been mailed to an improper address when defendant knew that plaintiff was confined in a hospital; that said checks did not "constitute payment of wages or salary due your petitioner," and that they "were returned to defendant when finally received as not being full payment of wages or salary"; that thereafter, on April 26, 1941, after recovery from his illness, plaintiff made demand in person at the office of defendant for "the full amount of his salary, but was again refused," that the small checks had been for $22.96 and $37.07 and were again sent to him by the defendant; that on finally receiving notice of his discharge on March 26, 1941, plaintiff notified defendant he "was entitled to his compensation and demanded same forthwith." Plaintiff further alleged as follows: "That your petitioner is entitled to his salary for the month of March, 1941 at the rate of $197.50 and for each month thereafter until such time as defendant shall pay or tender payment of the full amount due petitioner as provided for in Act 150 of 1920, as amended by Act 138 of 1936."

He also claimed attorney's fees of $750.00 under the state statutes and asked that he be permitted to "propound interrogatories on facts and articles, to be answered in writing, under oath, and categorically, by the defendant," which he annexed to his said petition, as permitted by the law of the state.

The prayer was for proper service, that the interrogatories attached to the plaintiff's petition be answered "in writing and under oath and categorically within the delay fixed by law" and that he have judgment "in the full sum of $197.50 for the salary of March, 1941, and for the additional sum of $197.50 for each specific month thereafter until such time as the defendant shall tender or pay the full wage claims of plaintiff herein, together with legal interest from judicial demand until paid, and all costs," and that he recover $750.00 attorney's fees and be permitted to prosecute the case in forma pauperis under a statute of the state.

The date of filing of this suit does not appear upon the certified copy of the petition, but the affidavit attached thereto is dated March 10, 1942. Exhibit C, attached to the motion to dismiss, also bears no date as to its filing in the state court, but the order dismissing it was signed on December 31, 1942. The motion to dismiss was made by the plaintiff as having been compromised. The prayer was for an order to return to plaintiff's counsel the two checks of the defendant for the above stated sums, which had been annexed to his petition "to be delivered to defendant" and "further, that this court enter an order dismissing this suit at plaintiff's cost." The court's order was in accordance with the prayer and further directed that this suit "be dismissed at plaintiff's costs."

The compromise settlement of the suit in the state court was evidenced by an agreement in writing signed by the plaintiff and his attorney and by the trustee in bankruptcy of the defendant railroad, together with the latter's attorney. It contained the usual recitals that rather than risk the chances of litigation, they "desired to com--

promise and settle between themselves the subject matter of the foregoing suit"; that defendant had paid the sum of $810.00, which plaintiff acknowledged to have received and "has and does by these presents release and discharge * * * defendant from any and all claims, demands, rights and/or causes of action for any and all wages, penalties, attorney's fees, damages, and costs whatever by reason of his discharge as an employee of the defendant * * *. This agreement of transaction and compromise being intended to effect a transaction, compromise and definitive settlement of all claims * * * arising out of the employment and subsequent discharge of Robert L. Richmond" by defendant. As stated, Richmond's attorney also appeared, approved and joined "in this definitive agreement of transaction, compromise and settlement."

While the suit in the state court originally was under Act No. 150 of 1920, and the amendment of 1936, it nevertheless was for wages claimed by the plaintiff therein, growing out of his employment and alleged wrongful discharge, which the Act required the former employer to pay within twenty-four hours, and as a penalty, full wages until payment was made. Of course, only such wages as had, under plaintiff's contentions, accrued at the time that suit was filed and the penalties provided by the state statute were demanded. He made no claim for breach of the contract of employment. There was a dispute, therefore, as to the amount due, as to when notice of discharge was lawfully given, and whether Richmond was entitled, under Act No. 150 of 1920, to be paid his full salary for the entire period to the date of the compromise on the "—— day of December, 1942," (evidently being December 31, 1942, the date of the order of dismissal by the state court). The salary at $197.50 per month from March 1, 1941, to December 31, 1942, would have amounted to $4345.00, but was settled for $810.00.

No reason appears why plaintiff could not, in that action, have included damages for breach of the contract of employment, just as he has done in this court, and a serious question arises as to whether, having failed to do so, he waived and abandoned any claim therefor under the provisions of Article 156 of the Louisiana Code of Practice, since it grows out of the same subject matter, the employment and alleged wrongful discharge, and was therefore part of a single cause of action.

Among the several cases cited by the complainant is that of Burns v. Northern Pac. Ry. Co., 8 Cir., 1943, 134 F.2d 766. There, the amount paid in the purported compromise settlement was found to have been nothing more than the wages actually due, and it was held to be without consideration insofar as it attempted to release further claims. In the present case, however, the jurisdiction and laws of the state were invoked, and the entire claim was settled for less than one-fifth of what, according to plaintiff's present contentions, was due for his full salary up to that time. It cannot be said, therefore, that defendant paid only that which was due. There were, as stated, issues both of fact and law which had to be adjudicated to determine what, if anything, was due. Plaintiff undoubtedly had the right in that suit to invoke also the federal statute upon which he now relies, but failed to do so and accepted the sum agreed upon in full settlement.

The damages now claimed are clearly based upon the theory that he is entitled to his full salary, with any increases which he might have received, for the full ten years from the date of discharge until the filing of the present suit, less the amount paid in the compromise settlement, which he asks be credited upon that salary for the period from the discharge to the date of compromise. In other words, he ignores the fact that he accepted $810.00 in full settlement of his demand for his salary at $197.50 per month from March 1, 1941, to the date of filing his suit on March 10, 1942, amounting at the time, under his present contention, to $2435.83, and claims the difference as a part of his demand here.

Plaintiff also quotes from the provisions of Article 3073 of the Civil Code, reading as follows:

"Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the

parties, whether it be explained in a general or particular manner, *unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.*

The renunciation, which is made therein to all rights, claims and pretentions, extends only to what relates to the differences on which the transaction arises."

Article 2046 of the Louisiana Civil Code provides that a litigant may sue for either specific performance, or damages for the breach of contract. The present action purports to be one for damages, yet the demand is clearly for the salary he asserts he would have earned, and in effect amounts to a claim for specific performance, requiring the defendant to pay that monthly salary. In a true action for damages, it would be necessary to prove what he had lost, such as being without employment, if that was true, for any given period of time, with credit for what he had actually earned in the meantime, and for such other damages as were the direct consequences or result of the breach of the contract of employment. See Articles 1930-1935 of the Revised Civil Code of Louisiana. No such allegations are made. So, his case must be treated for that which it really is, to wit, a demand for his wages, on the theory that he legally remained an employee of the defendant. If the demand is only for salary or wages, then all that part of it that was more than three years passed due when the present suit was filed, was barred by the three-year prescription pleaded by defendant under Article 3538 of the Civil Code, which provides in part:

"The following actions are prescribed by three years:

\*     \*     \*     \*     \*     \*

"That for the salaries of overseers, clerks, secretaries, and of teachers of the sciences \* \* \*."

Thus, treated as a demand for wages, it is believed the requirements of Article 3073 dealing with compromise settlement are met by the clear provisions of the agreement in this case, wherein it declares that " \* \* \* Robert L. Richmond has

and does by these presents release and discharge \* \* \* defendant from *any and all claims, demands, rights and/or causes of action for any and all wages, penalties, attorney's fees, damages and costs whatever by reason of his discharge as an employee of the defendant* \* \* \*. *This agreement of transaction and compromise being intended to effect a transaction, compromise and definitive settlement of all claims* \* \* \* *arising out of the employment and subsequent discharge of Robert L. Richmond*" by the defendant. (Emphasis by the writer.)

Regardless of whether, in bringing his suit in the state court originally, he intended to claim damages or merely the relief provided by Act No. 150 of 1920, as amended, no plainer language could have been used to show that the parties intended to finally settle all differences between them of "whatever" nature growing out of the relationship of employer and employee. The very act under which he sued in the state court was clearly intended to compel the employer to pay promptly the salary or wages of a discharged employee.

The motion for summary judgment should therefore be sustained.