John W. Williams, Plaintiff-Appellant, v. East St. Louis Junction Railroad Company, Defendant-Appellee.

Term No. 52–O–26.

Opinion filed January 30, 1953. Released for publication March 4, 1953.

LOUIS BEASLEY, of East St. Louis, for appellant.

OEHMKE & DUNHAM, of East St. Louis, for appellee; HOWARD F. BOMAN, of East St. Louis, of counsel.

MR. PRESIDING JUSTICE BARDENS delivered the opinion of the court.

Plaintiff brought this action under the Federal Employers' Liability Act. Trial was had before a jury resulting in a verdict in plaintiff's favor in the sum of $10,000. Defendant filed motion for judgment n. o. v. and motion for new trial. The trial court granted defendant's motion for judgment notwithstanding the verdict and in the alternative granted a new trial on the ground that the verdict was against the manifest weight of the evidence.

Plaintiff charged in the complaint that the defendant was negligent in (1) ordering the plaintiff and five other men to carry a 33-foot rail weighing eighty-five pounds per foot from a pile of rails to a push car when such rail could not be handled with reasonable safety by the six men assigned thereto. (2) Failing to furnish plaintiff a reasonably safe place in which to work. (3) Failing to furnish rail tongs which were in common use by railroad companies. (4) Failing to furnish sufficient help to move the rail in question with reasonable safety. Defendant's answer denied negligence and set up an additional defense of a release, under seal, of the cause of action. Plaintiff filed a reply denying he had signed a release but merely signed a receipt for wages and alleging that the release was obtained by fraud on the part of the agents and servants of defendant.

297

The plaintiff's evidence showed that he was working on October 26, 1950, under a foreman by the name of Juelfs in a gang consisting of nine men. About three-thirty p. m. on that day the foreman took six men on the motor car and went about four or five blocks to get a rail to go in the track. The plaintiff and five other men were ordered to carry the rail thirty-three feet long from a pile of rails for a distance of about thirty feet to a push car standing on the track. Plaintiff and a man by the name of Skinner and another man by the name of Manila were on one end of the rail carrying the same by hand because they were not furnished with any rail tongs. Between the pile of rails and the push car there were a number of other pieces of rail lying on the ground and in the process of carrying the rail, after two or three steps had been taken, Skinner slipped and fell and Manila turned loose of his hold on the rail and the whole load was thrown on the plaintiff, snapping him over and hurting his back. The plaintiff continued to work until about four-thirty even though he was suffering pain, and he went home that night but did not get any treatment from a doctor. He went to his foreman the next day and eventually got an order to go to the company doctor. Plaintiff produced no witnesses to corroborate his story of the accident.

■ On behalf of the defendant the witness Skinner was called and testified that he remembered the occasion in October of 1950 when he and the plaintiff and others went after the rail as described by the plaintiff. The witness Skinner, however, denied that the plaintiff was involved in an accident and denied that he, the witness, stubbed his toe or fell. Other witnesses called on behalf of the defendant and who were engaged in the same operation did not remember any such instance as described by plaintiff. It appears clear, therefore, that the evidence in this case was highly conflicting, so much

so, in fact, that the trial judge found the verdict against the manifest weight of the evidence.

We come now to a consideration of the affirmative defense alleging that the plaintiff had fully released his cause of action. The release introduced into evidence was a full release under seal and, of course, bars the action in this case unless its effect is avoided by the plaintiff. In order to avoid this effect, the plaintiff, as hereinbefore stated, replied first that he did not sign the release but only signed a receipt for wages and, secondly, that the release was induced by fraud because of the false and fraudulent representations that it was merely a receipt for wages.

Plaintiff's evidence bearing upon the release is hereinafter set out. He testified that after the accident in October he continued to work until November 24. He was then off for a period of six working days and returned to work on December 4, 1950. On December 6, 1950, he received his regular pay check. Upon receiving this check he asked the timekeeper if it included wages for the time lost in the injury. Upon ascertaining that the time lost was not included, he was told that the timekeeper could turn in only the time actually worked and that he must see Mr. Reichert, the secretary-treasurer of the company, to collect for pay for the six days that he did not work on account of the injuries. Plaintiff thereafter went to see Mr. Reichert and his testimony regarding that transaction is as follows: ''I didn't say anything to Mr. Reichert. I walked in and told him I come over there, and he said, 'Oh, you come in here, here is your check. Sign this here and get your check.' I did not talk to anyone in the office and no one in the office talked to me besides Mr. Reichert. That was only for the time I lost from my injury. At the time Mr. Reichert gave me this check, he gave me a little blue paper that has been marked as Plaintiff's Exhibit 1. The figure $60.38 appears on there.

The amount of the check that I got was $56.76. The other $3.00 and some cents was deducted. It was Railroad Retirement.

"On December 6th at the time Mr. Reichert handed me the check for $56.76 he told me to sign the paper to get my check. He did not say what the check was for. He did not say anything to me about a settlement or compromise, or a release or anything like that. That is the paper that I got at the time I signed the paper that he told me to sign. I do not know what that paper was that I signed, and I didn't know what was in it. I didn't read it."

On cross-examination plaintiff testified as follows: "Mr. Reichert told me to sign Defendant's Exhibit 1 to get my check. It was on the desk and I was standing in front of it. I just picked the paper up and looked to see if the amount they paid me was the amount for the days I lost from the injury. I can read fairly well. I see the word 'Release,' up at the top there. I didn't see that word when I saw that paper that day. I wouldn't say the word was there or it was not there. I just glanced at the paper. At that time Mr. Reichert was standing right there. Mr. Reichert did not tell me it was a receipt for wages, and I never got receipts when I got paid for wages. All I got was the check, twice a month, the years I was there. After I glanced at the paper at the wages, I signed it. There was another man there but I didn't know his name. He saw me sign it. After I signed the paper he gave me Defendant's Exhibit 2, a pink check. I took the check and endorsed my name on the back of it and cashed it at the National Stock Yards National Bank the same day. I got $56.76 on that check and kept the money until I spent it. At the time he gave me the check he gave me Plaintiff's Exhibit 1 that has been introduced in evidence. It says on there, Claim $60.38. Nothing said about wages. I did not know what a release was. Had no idea what a

300

release was. Had never seen one before. I had an accident in January, 1949, and was paid some money on account of that. That is my signature on Defendant's Exhibit 4. The word on top was 'Release.' I went to Mr. Reichert at the time this release was signed, February 28, 1949, and they paid me with a pink check then.'' The above testimony as recited herein was taken from the brief filed by the plaintiff.

On behalf of the defendant the witness Reichert testified that he directed the plaintiff to read the exhibit and after the plaintiff had looked at it he asked the plaintiff if it looked all right and plaintiff said, ''Yeah,'' and signed it. The release was introduced in evidence as Defendant's Exhibit 1 and was a full release under seal. Defendant's Exhibit 4, referred to in plaintiff's cross-examination, was a release identical in nature signed at the time that plaintiff was claiming an injury in February, 1949.

 Plaintiff very strenuously insists that the validity and effect of this release should be adjudged under federal procedure and that under federal procedure it is required that the question of the validity of a release be submitted to and acted upon by the jury and that the jury's verdict is binding. He relies upon the case of *Dice v. Akron, C. & Y. R. Co.*, 342 U. S. 359, 96 L. Ed. 398, 72 S. Ct. 312. It is unquestionably true that federal law controls actions under the Federal Employers' Liability Act in federal as well as state courts. The *Dice* case, *supra*, however, is authority only for the proposition that where there is competent evidence to support the claim of fraud in securing a release the question must be submitted to a jury for a determination. It furnishes no authority that the courts may not direct a verdict or grant judgment notwithstanding the verdict where there is no evidence to sustain the allegation of fraud. Furthermore, federal law is settled that in order to avoid the effect of a re-

301

lease the burden is on the one attacking the settlement to show that the contract is tainted with invalidity either by fraud or mutual mistake of fact. *Callen v. Pennsylvania Ry. Co.*, 332 U. S. 625, 92 L. Ed. 242, 68 S. Ct. 296. Therefore the burden rested upon the plaintiff to produce evidence to show fraud as alleged in his reply to the affirmative matter in defendant's answer.

██ The evidence in this case, taken in its light most favorable to the plaintiff, discloses that the plaintiff could read and write and had by the study of books and the taking of examinations, graduated from an auto mechanics school. Plaintiff was asking to be paid for time that he lost on account of an injury. He had full opportunity to read the release before he signed it and the word "release" was written in large letters at the top of the instrument. Plaintiff received his regular pay checks on blue paper, whereas his check at the time of the execution of the release was issued on pink paper. In February 1949, when plaintiff entered into a similar release for a claimed injury, he was also paid by a check written on pink paper rather than blue paper. The evidence of plaintiff fails to disclose that any agent of the defendant made any misrepresentations about the instrument that he was required to sign in order to get his check for wages for the period that he did not work and, in fact, plaintiff stated on cross-examination that the witness Reichert did not represent the instrument as being simply a receipt for wages. Under these circumstances there is no evidence whatsoever of fraud or mutual mistake of fact. The only basis upon which the court or jury could say that this release is not binding upon the plaintiff would be based upon the plaintiff's assertion that he did not actually read the release. In as much as the evidence showed that plaintiff could read and understand the English language and had opportunity to read the release before signing it, with-

out any misrepresentations being made to him, to then set aside the effect of the release on the testimony of plaintiff that he actually did not read it would constitute an undesirable innovation in law so apparent that it seems to us to need no further discussion.

For the reason that the cause of action was released and the plaintiff has failed to show any legal grounds of vitiating the release, it was not error for the lower court to grant the motion for judgment notwithstanding the verdict.

*Judgment affirmed.*

CULBERTSON, J. and SCHEINEMAN, J., concur.