(No. 5310—

ANTENNA SERVICES, INC., A CORPORATION, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 24, 1969.*

GIFFIN, WINNING, LINDNER AND NEWKIRK, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, Antenna Services, Inc., seeks recovery of $3,450.00 for damages to its antenna tower and other property, as well as lease monies alleged to have been lost from tenants when a dump truck belonging to the Department of Public Works and Buildings of respondent snapped off a set of wires to the antenna tower causing it to fall.

The evidence reveals the following undisputed facts:

On November 5, 1965, claimant owned a communications radio tower, 220 feet tall, in DuPage County, Illinois. Transmission lines were installed on the tower with electrical wiring, and a distribution service was located in the transmitter building adjacent to the tower at its base. The tower was triangular in shape, 24 inches on each side, with guy wires supporting it every forty feet. The base of the tower was on a concrete pad. The guy wires extended from the tower in three directions, each 120° apart with steel anchors to the guy wires in the concrete. Claimant had eight customers, who subscribed to the tower at the time of the accident.

On the day of the accident, respondent's agents had been working on a highway approximately one mile from the tower. A truck owned by respondent drove onto claimant's property without permission. It dumped its load, and in going out the body of the truck caught the lower set of guy wires at the thirty foot level and snapped them. The truck then lowered the dump body with the guy wires still between the chassis and the dump body and accelerated its speed pulling down the tower, which also struck a car on the adjacent property of a Chevrolet dealer.

Respondent was insured by the United States Fidelity and Guaranty Company in the amount of $10,000.00, of which $9,148.58 went to claimant and the remainder to the Chevrolet dealer.

Claimant alleges that it has sustained damages in the amount of $12,596.50, or $3,450.00 more than it was paid by respondent's insurer.

A release, dated December 15, 1965, which was signed by claimant's agent, provides the following:

"That We Antenna Services Inc., by N. A. Philips, Secretary, for the sole consideration of Nine Thousand One Hundred and Forty-Eight Dollars and Fifty-Eight Cents ($9,148.58) to us in hand paid by Virden E. Staff, Payer, the receipt whereof is hereby acknowledged, *have released and discharged,* and by these presents do for ourselves, our heirs, executors, administrators, and assigns *release and forever discharge* the said Payer and *all other persons, firms, and corporations, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature,* for or because of any matter or thing done, omitted, or suffered to be done by anyone prior to and including the date hereof *on account of all injuries both to person or property resulting, or to result,* from an accident, which occurred on or about the 2nd day of November, 1965, at Chicago, Illinois.

"We understand said Payer, by reason of agreeing to this compromise payment, neither admits nor denies liability of any sort, and said Payer has made no agreement or promise to do or omit to do any act or thing not herein set forth, and *we further understand that this release is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown, including future developments thereof, in any way growing out of or connected with said accident.*

"We admit that no representation of fact or opinion has been made by the said Payer or anyone on her, his, or their behalf to induce this compromise with respect to the extent, nature or permanency ·of said injuries, or as to the likelihood of future complications or recovery therefrom, and that the sum paid ˙is solely by way of compromise of a disputed claim, and that in determining said sum there has been taken into consideration the fact that serious or unexpected consequences might result from the present injuries, known or unknown, from said accident, and *it is, therefore, specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature resulting or to result from said accident.*

*CAUTION: READ BEFORE SIGNING"*

(Emphasis supplied.)

The sole question in the instant case is what was the legal effect of the execution of the release by claimant. Claimant contends that the release was signed only by mistake, and that, despite the signing of the release, Mr. Allen Tomlinson, Claims Supervisor of the Department of Public Works and Buildings, still continued to negotiate with claimant for the balance of claimant's damages. Claimant further alleges that claimant's officer

who signed the release did not believe he was releasing the State of Illinois, but only the insurance company. Claimant alleges that, at the time its agent, Nicholas Philips, executed the release, he was mistaken as to the legal effect of his act. Mr. Philips testified that he was told by the United States Fidelity and Guaranty Company that, unless the release was signed, he would receive no proceeds to compensate him for any of his out-of-pocket losses. He further stated that he was without sufficient funds at the time of the loss to replace the damaged equipment without resorting to the insurance proceeds. Claimant alleges that Mr. Tomlinson was also mistaken as to the effect of the release, because he sent a letter to claimant, dated February 4, 1966, wherein he requested that Mr. Philips send him a full description of the damaged equipment, make, model, size, when it was installed, by whom, and when it was painted. It is this letter, which claimant contends apparently vitiates enforcement of the release.

Mr. Philips testified that he read the release before he signed it, and that it did not say anything about the State of Illinois, but merely mentions Virden E. Staff whom Philips assumed was a person employed by the insurance company. The release was signed only by Mr. Philips for the "sole consideration of $9,148.58 paid by Virden E. Staff, Payer." Nowhere is it contended that Mr. Tomlinson was a party to the release, or that he was present at the execution thereof. Neither party in the instant case called Mr. Tomlinson as a witness.

Respondent argues that a unilateral mistake of fact will not operate to set aside a clear and unequivocal release. In the case of *Welsh* vs. *Centa,* 75 Ill. App. 2d 305, 221 N.E. 2d 106, the court held that the burden of

proving that a release should be set aside rests with the party urging invalidity of the release, and the evidence must be clear and convincing. The court further held that the parties must be mutually mistaken, and a unilateral or self-induced mistake of fact will be insufficient to void a release.

The court in *Inter Insurance Exchange of Chicago Motor Club* vs. *Andersen and Kuntz,* 331 Ill. App. 250, 73 N.E. 2d 12, held that a release acknowledging payment in full settlement of all claims on account of an automobile accident causing personal injury and property damage was a "general release", and was not ambiguous, and, therefore, testimony, which tended to show the intention of the parties to effect a limited release, was inadmissible.

In *Williams* vs. *East St. Louis Junction Railroad Co.,* 349 Ill. App. 296, 110 N.E. 2d 700, 702, the court stated:

"Inasmuch as the evidence showed that plaintiff could read and understand the English language and had opportunity to read the release before signing it, without any misrepresentations being made to him, to then set aside the effect of the release on the testimony of plaintiff that he actually did not read it would constitute an undesirable innovation in law so apparent that it seems to us to need no further discussion."

The general rule as set forth in 45 *Am. Jur.,* p. 685, is as follows:

"A mistake relating to the legal consequences of a release as to the effect of the release of one joint obligor upon the liability of his co-obligors is ordinarily immaterial."

In *Davis* vs. *Weatherly,* 119 Ill. App. 238, 241, the court stated:

"Having signed, executed and delivered the release, appellee is presumed to have done so with knowledge of its contents and import, and may not even be heard to say that she did not understand it. It is a contract in writing, and in an action at law parol testimony is not permissible to vary its terms or meaning. The writing must speak for itself, and its legal effect as a release and a complete bar can be

avoided in an action at law in only one way, and that is to prove that appellee's signature to it was obtained by fraud or that it was without consideration. As already stated, the burden of such proof is upon the appellee."

It is the opinion of the Court that claimant has not sustained the burden of proving that the release is invalid in an action against respondent. Claimant's agent had opportunity to read the clear and unambiguous terms of the release, and, in fact, testified that he did so. Although claimant was not represented by counsel at the time its agent signed the release, nothing would have prevented its hiring of an attorney to explain the legal effect of signing the release and receiving consideration therefor.

Therefore, claimant's request for additional funds must be denied.