## BURNS v. NORTHERN PAC. RY. CO.

### No. 12442.

Circuit Court of Appeals, Eighth Circuit.

April 14, 1943.

Wm. C. Green, of St. Paul, Minn. (Elizabeth L. Bonham, of St. Paul, Minn., and William P. Horan, of Wells, Minn., on the brief), for appellant.

Conrad Olson, of St. Paul, Minn. (L. B. daPonte and Frederic D. McCarthy, both of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiff in the district court from a judgment entered upon a directed verdict for the defendant.

Prior to July, 1938, the plaintiff Burns was employed by the defendant Railway Company as a steward in its Dining Car Department. For some time he had been assigned to duty on a train running between Seattle, Washington, and Portland, Oregon. His home terminal was Seattle. His salary was $205.20 a month. He was a member in good standing of the Brotherhood of Railroad Trainmen, an unincorporated association, national in scope, of railroad employees including dining car stewards. The association, in conformity with the Act of Congress of May 20, 1926, as amended, entitled the Railway Labor Act, c. 347, § 1 et seq., 44 Stat. 577, 45 U.S.C.A. § 151 et seq., is the recognized and exclusive collective bargaining agent for its members with the defendant. At the times material to this controversy a written contract containing rules covering the employment of stewards was in force and effect between the association and the defendant.

This suit was brought by plaintiff in August, 1941, against the defendant to recover damages for his alleged wrongful discharge in 1938 in violation of the terms of the contract referred to. As one of its defenses the defendant alleged that on April 3, 1940, plaintiff in consideration of the payment to him of the sum of $225 released the defendant in writing from the claim sued upon. The receipt of payment of the $225 and the execution of the written release, a copy of which was attached to the answer, were admitted.

The plaintiff contended that the release was invalid for the reasons: (1) That there was an entire want of consideration for the release of plaintiff's cause of action for wrongful discharge; (2) that if there were any consideration it was inadequate to bar the present action; (3) that the release was the result of mistakes of law amounting to a mistake of fact on the part of the plaintiff; (4) that there was fraud in the procurement of the re-

768

lease; and (5) that there was mutual mistake of both parties to the release.

The case was tried to a jury. Prior to the trial the court entered an order, to which the plaintiff excepted, providing that the validity of the release pleaded in the answer be tried and determined in the first instance. At the close of the evidence on this issue the defendant moved for a directed verdict in its favor on the ground that the evidence showed conclusively that the release is a complete bar to plaintiff's cause of action. The motion was sustained by the court, a verdict was directed, and a judgment was entered decreeing the validity of the release, denying recovery, and taxing costs to the plaintiff.

Upon this appeal the plaintiff contends that the court erred (1) in directing the issue of the validity of the release to be first tried and determined; (2) in certain adverse rulings on the admission of evidence; and (3) in sustaining the motion for a directed verdict for the defendant. Plaintiff contends that the evidence establishes beyond dispute each and every defense to the general release urged in the trial court.

In oral argument before this court counsel for plaintiff conceded that the court did not commit prejudicial error in directing the issue of the validity of the release to be first tried. Since we have reached the conclusion that the court did err in holding that there was consideration for the release of plaintiff's claim and cause of action for damages for wrongful discharge, it will be unnecessary to discuss the other contentions of the parties. This point is decisive of the propriety of directing a verdict in favor of the defendant at the close of the evidence.

The release pleaded by the defendant as a bar to plaintiff's cause of action is in the form of a letter from M. J. Byrnes, assistant to defendant's vice president, addressed to the plaintiff, Thomas W. Burns, at St. Paul, Minnesota, under date of April 3, 1940. It reads:

"Mr. Thomas W. Burns,
"Frederic Hotel,
"St. Paul, Minn.
"Dear Sir:
"Referring to conference on April 2d about your discharge from service as a dining car steward on July 14, 1938, and referring also to previous conferences in connection with this same matter:

"You were instructed to leave Seattle on second No. 2 on June 22, 1938, and report at St. Paul, and upon arrival of this train at St. Paul you were notified to appear at investigation. This investigation was held at 9:30 a.m. June 25, 1938. You were advised on July 14, 1938, that you were discharged from the service of the Northern Pacific Railway. You contend that you should be paid for the loss of time between June 22, 1938 and July 14, 1938, together with necessary expenses which you incurred at St. Paul from June 25, 1938, to July 14, 1938.

"While we do not agree that there is any basis under schedule rules for your claim for loss of time or payment of expenses as above mentioned, we will because of the particular circumstances in this case and in order to dispose of it, allow you the sum of $225.00 to compensate you for your loss of time between June 22 and July 14, 1938, and expenses which you state you incurred during that period.

"Settlement as above stipulated is understood and agreed to entirely dispose of any and all claims against the Northern Pacific Railway Company and its officers and employes growing out of or on account of your being called to St. Paul, Minnesota, to attend an investigation in June, 1938, and your discharge from service of the Northern Pacific Railway Company on July 14, 1938.

"It is further understood and agreed that your discharge from the service of the Northern Pacific Railway on July 14, 1938, as a result of the investigation which was held on June 25, 1938, was proper, and that in consideration of the payment to you as herein stipulated any pending request or claim for your reinstatement into the service of the Northern Pacific Railway Company as a dining car steward is hereby withdrawn, and that no request or claim for your reinstatement into the service of the Northern Pacific Railway Company as a dining car steward will hereafter be made by you or on your behalf.
"Yours truly,
"(Sgd) M. J. Byrnes
"Asst. to Vice President.
"Agreed to:
"(sgd) Thos. W. Burns."

The voucher for $225 delivered to plaintiff by the defendant at the time the release was signed contained the following statement of the account for which it was given: "Payment for loss of time between

June 22, 1938, and July 14, 1938, and expenses incurred at St. Paul from June 25, 1938, to July 14, 1938, as per letter of April 3, 1940, from Mr. M. J. Byrnes, Asst. to Vice President, addressed to and accepted by Thomas W. Burns."

The facts recited in the letter prepared by Mr. M. J. Byrnes are not in dispute. More concretely, and in further detail, these facts are that on June 22, 1938, A. W. Thomson, defendant's dining car superintendent, having his office in St. Paul, ordered the plaintiff by telegram to deadhead on pass from Seattle to St. Paul. The telegram did not state the purpose for which the trip was to be made nor suspend or terminate plaintiff's employment. Upon his arrival in St. Paul in the early morning of June 25, 1938, a letter signed by Mr. Thomson and dated June 24, 1938, was handed to him. The letter directed him to appear at Mr. Thomson's office at 9:30 A.M. on June 25th for a formal investigation of his conduct. He appeared as directed and a short hearing was held, at which he had no witnesses and introduced no evidence. No decision was announced at that time, and no order and no instructions were given plaintiff by any officer of defendant. The first notice given him was on July 14, 1938, on which date a letter was given him signed by Mr. Thomson, the pertinent part of which reads, "* * * you are discharged from the service, effective June 23, 1938. Please arrange to turn in your transportation and such other company property as you may have in your possession." He then turned over his pass and was given a three day pass to return to Seattle.

When plaintiff left St. Paul on July 15, 1938, to return to Seattle he left his claim for reinstatement with Thomas Murphy, local chairman of the Brotherhood of Railroad Trainmen. In December, 1938, he was informed by Mr. Furst, general chairman of the Brotherhood, that Murphy had failed to perfect his appeal from the discharge within the 30 day period provided by the agreement existing between the Brotherhood and the defendant. Sometime in June, 1939, he also learned that Furst, although not authorized to do so, had withdrawn his claim for reinstatement on December 20, 1938.

The plaintiff then filed a claim for reinstatement with the Third Division of the National Railroad Adjustment Board, and that Board declined jurisdiction. He then complained to the Industrial Commission of the State of Minnesota that he had been discharged by the defendant and that he had not been paid for his time and expenses from June 22, 1938, to July 14, 1938. The Commission wrote a letter under date of December 18, 1939, to Mr. Thomson in reference to the matter, saying the Commission could see no reason "why his wages should not be paid up to the date of dismissal." The letter concluded: "We are therefore urging that this matter be given your immediate attention and that Mr. Burns be given his pay for 21½ days due him together with his expenses amounting to $78.12. * * *"

This letter resulted in the initiation of negotiations leading to the execution of the release here involved on April 6, 1940. By direction of H. E. Stevens, vice president of the defendant, his assistant, M. J. Byrnes, conducted the negotiations on defendant's behalf. Byrnes proposed to pay plaintiff $225 in satisfaction of his claim for 21½ days for loss of time and $78.12 expenses on condition that plaintiff sign a general release. Plaintiff at first refused the offer with the condition included, but he afterwards returned to Byrnes' office and signed the release set out above and accepted a voucher for $225.

That the defendant was indebted to the plaintiff in the full amount of $225 cannot be doubted. The amount of the claim and the method of figuring it are not in dispute. The defendant's contention is that plaintiff's claim for loss of time and expenses was in dispute for two reasons: First, because the notice of discharge delivered on July 14, 1938, stated that the discharge was retroactive, that is, that it was "effective June 23, 1938", and, second, because the letter containing the terms of settlement dated April 3, 1940, said, "We do not agree that there is any basis under schedule rules for your claim for loss of time or payment of expenses."

It is undisputed that the contract heretofore referred to between the Brotherhood of Railroad Trainmen and the defendant governs the substantive rights of the parties to this suit, and that their legal obligations under the contract are controlled by Minnesota law. This is true because the contract is a Minnesota contract. Whether there existed any basis for a bona fide dispute in regard to plaintiff's claim for wages and expenses from June 23 to July 14, 1938, must be determined,

therefore, from an examination of the contract in the light of the uncontradicted facts stated above.

Rule 2 of the contract provides that the basic month's work of a steward shall be 240 hours, and rule 6(c) provides that when stewards are held at points other than at their home terminals they shall be allowed eight hours for each 24 hour period during which they are so held. Other pertinent rules are:

"Rule 11. (a) Stewards deadheading by order of the Company will be paid pro rata for actual hours so consumed with a maximum of eight hours in any twenty-four hour period. * * *

"(b) Employes deadheading to a point away from their home terminals and held for service at such point, will, when they are not required to perform service, be allowed eight (8) hours at their straight time hourly rate for each calendar day held."

"Rule 14. When stewards are required by the Company to attend court or give similar service, they shall be paid eight hours pay at their regular rate for each calendar day so held, and necessary living expenses when called upon to leave home. * * *"

It is not contended that these rules of the contract are not applicable. A simple calculation shows that the amount due for time and expenses for 21½ days is in the sum of $225.18.

Under the contract of employment the plaintiff was subject to the orders and directions of the defendant at all times until the notice of discharge was given to him on July 14, 1938. The order for plaintiff to come to St. Paul was not changed nor modified until that time. Clearly his employment did not end before then. The fact that he was not assigned a task nor required to render service of any kind between June 23d and July 14th is immaterial both under the foregoing rules and as a matter of law. Employees whose only duty it is "to stand and wait" are entitled to wages, and, in this case under rule 14, to living expenses during the period of waiting. Missouri, K. & T. Ry. Co. v. United States, 231 U.S. 112, 119, 34 S.Ct. 26, 58 L.Ed. 144; Chicago, R. I. & P. R. Co. v. United States, 8 Cir., 253 F. 555; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115.

The attempt to make the discharge retroactive and the refusal to admit the claim in the letter of April 3, 1940, amount only to a refusal to pay and discharge an existing legal obligation. The refusal to pay an undoubted obligation when due is not a basis for such a dispute as to constitute a consideration for settlement by way of compromise of another claim not included in the obligation. There must have been an actual bona fide difference or dispute between the parties regarding rights considered doubtful. De Mars v. Musser-Sauntry L. L. & M. Co., 37 Minn. 418, 35 N.W. 1, 2. In the cited case Mr. Justice Mitchell, speaking for the court, said: "A person cannot create a dispute sufficient as a consideration for a compromise by a mere refusal to pay an undisputed claim. That would be extortion, and not compromise." In order that there may be consideration, there must be mutual concessions. A release is not supported by sufficient consideration unless something of value is received to which the creditor had no previous right. Tupper v. Massachusetts Bonding & Ins. Co., 156 Minn. 65, 194 N.W. 99. A receipt in full of all claims and demands given as evidence of such a settlement does not operate as a discharge of a claim which affirmatively appears not to have been included within the settlement as evidence of which the receipt was given. Held v. Keller, 135 Minn. 192, 160 N.W. 487.

These principles have frequently been applied by the Supreme Court of Minnesota. See Ness v. Minnesota & Colorado Co., 87 Minn. 413, 92 N.W. 333; Foster County State Bank v. Lammers, 117 Minn. 94, 134 N.W. 501; Hale v. Dreessen, 76 Minn. 183, 78 N.W. 1045; Edwards v. Svea Fire & Life Ins. Co., 141 Minn. 285, 170 N.W. 206, 207. In the last case cited there was involved a settlement and general release of a claim for loss under a fire insurance policy. The court there said: "The liability for the loss on the household goods and the merchandise was clear and the amount thereof beyond controversy. Such amount was paid and nothing more. There was therefore an entire want of a legal consideration for the relinquishment of the loss on the building." Similarly, under the undisputed evidence in this case the amount due from the defendant to plaintiff for loss of time and expenses was "beyond controversy."

Accordingly there could be no legal consideration for a different and distinct claim for damages for wrongful discharge.

In summary there was a complete want of consideration for the release of plaintiff's alleged cause of action for damages for wrongful discharge because there was lacking a bona fide dispute in regard to the claim for wages for loss of time and expenses in settlement of which the sum of $225 was paid. There was a complete absence, also, of mutual concession in respect of the claim for damages; and there was likewise nothing of value passing from the defendant to the plaintiff to which the plaintiff was not entitled as of right.

For the foregoing reasons the judgment appealed from is reversed and the case remanded for further proceedings not inconsistent with this opinion.