EUGENE E. MAYNARD v.
DURHAM AND SOUTHERN RAILWAY COMPANY.

(Filed 29 January, 1960.)

**1. Master and Servant § 39½ : Torts § 8a: Cancellation and Rescission of Instruments § 9—**

The burden is upon the party attacking an instrument for fraud or undue influence to establish his allegations by the preponderence or greater weight of the evidence. This rule applies to the attack of a release under the Federal Employer's Liability Act.

**2. Master and Servant § 39½ : Torts § 8a—**

The payment to an employee of his wages for the period of time he did not work because of injury is sufficient consideration to support the employee's execution of a release from liability, the employee not being entitled as a matter of law to such wages.

**3. Same—**

Testimony of an employee that he signed the release in question without reading it or understanding its contents, that the employer's agent did not make any false representations or do anything to induce the employee not to read the instrument, but merely failed to explain the paper to the employee, and that neither at that time thought that the injury would develop into any permanent disability, *is held* insufficient to set aside the release for fraud or duress.

PARKER, J., dissents.

APPEAL by plaintiff from *Williams, J.,* 2 April Regular Civil Term, 1959, of WAKE.

This is a civil action instituted pursuant to the provisions of the Federal Employers' Liability Act, by the plaintiff, an apprentice railroad section foreman, against his employer, Durham and Southern Railway Company, to recover for personal injuries allegedly sustained on 22 August 1955 while assisting in the loading of a motorized track car into the rear of one of the defendant's trucks in Dunn, North Carolina.

The evidence tends to show that shortly before noon on the date in question the plaintiff and three section laborers were instructed by the defendant's roadmaster, Mr. Tillerson, to load a two-man motorized track car into the rear of the defendant's ton and one-half truck which was parked near the crossing. The truck on which the car was to be loaded was an ordinary flat body truck with a canvas top supported by wooden ribs. The distance between the bed of the truck and the ribs supporting the canvas top was about three and one-half or four feet.

The plaintiff was instructed by the defendant's section foreman,

Mr. Parrish, to get up in the bed of the truck and catch the end of the track car when the other men lifted it, to keep it from rolling back on the men who were lifting it into the truck. When the plaintiff got into the bed of the truck, the three section laborers, according to plaintiff's testimony, suddenly and without warning shoved the track car into the truck, without giving him an opportunity to move out of the way. Plaintiff testified: "When I was in the truck, I was in a stooped position. I couldn't straighten up for the top of the truck. Then they shoved the thing in on me * * * catching my legs across the bottom frame of the car and the iron of the motor car caught me in the chest and my back because it was against the top braces * * *. When the truck was pushed in on me and I was caught between it and the top, I felt a sharp, stabbing, sickening pain in the small of my back, and it kind of cut my wind off there for a minute, and then they released the car and I got out and it kind of eased off after a little bit until I started to step back and then I had the same pain again * * *."

The plaintiff's foreman, J. H. Parrish, who directed the loading of the track car, was used by plaintiff as a witness. This witness testified: "The only thing I heard Mr. Maynard say was 'wait a minute, don't shove it on me.' * * * The car was handled in a safe manner. * * * The men rolled it up normally. Mr. Maynard made no complaint to me. Very likely I would have seen it if the men had rammed the motor car on Mr. Maynard. I was there. I didn't see it happen. I heard no complaint from him. It was something like two weeks after that I did hear about it. That was the first time that I heard about him having hurt his back."

The evidence further tends to show that the plaintiff made and signed an accident report on 23 August 1955 in which he answered the question as to the "Probable Period of Disability: None is expected." He likewise answered the question, "Was equipment causing accident properly handled? Yes."

On cross-examination the plaintiff testified, "I didn't expect any permanent disability at that time. I just thought it was a mild back strain that I would get over within a few weeks or a month. When I signed it (the accident report) with the answer to the probable disability, 'None,' I meant it at that time. * * * The accident happened on August 22, 1955. * * * I reported back to work on Tuesday, the 23rd of August, and worked all day that day * * *. On the next day I went to see the doctor * * *."

The plaintiff first went to see Dr. Goodwin in Apex, North Carolina and later to see Dr. Wilson, the company physician at Durham,

as well as other doctors, and took heat therapy treatment at Duke Hospital. None of the doctors prescribed anything for the plaintiff except a brace, which Dr. Wilson prescribed.

Plaintiff's evidence also tends to show that it was the policy of the defendant, when an employee sustained an injury and did not work, when he returned to work he was paid his back wages in full, as though he had put in full time, if he would sign a release.

On Saturday, 17 September 1955, the plaintiff went to Durham, North Carolina, to see Mr. H. A. McAllister, Vice President and General Manager of the defendant company. Mr. McAllister testified that "Mr. Maynard stated that he wanted to know if the company could pay him for the time he was off and if we would he was ready to sign a release. He said he was feeling much better, and thought he was going to be all right." Whereupon, the plaintiff signed the following release:

· "KNOW ALL MEN BY THESE PRESENTS, That for and in consideration of the sum of One Hundred forty-four dollars and sixty cents — Dollars ($144.60), to me in hand paid by the DURHAM AND SOUTHERN RAILWAY COMPANY, the receipt of which is hereby acknowledged, I, E. E. Maynard, do hereby release and forever discharge the Durham and Southern Railway Company, its successors and assigns, from all claims, demands, actions or rights of action, of every nature whatsoever, now existing, or hereafter to arise, on account of, or in connection with personal injuries received at Dunn, N. C., on Monday, August 22, 1955, while assisting Mr. Parrish's Section force in loading a track motor car on a company road truck at or near Dunn, N. C. on or about the 22nd day of August, 1955, and all results attending or following, or which may hereafter arise therefrom.

· "This release is fully understood by me, constitutes the entire agreement between the parties hereto, and is executed solely for the consideration above expressed, without any other representation, promise, or agreement of any kind whatsoever.

"Given under my hand and seal, at Durham, N. C., this the 17th day of September, 1955. /s/ E. E. Maynard (SEAL) WITNESS: /s/ J. Chas. Phelps. WITNESS: /s/ E. Sweaney Jackson. SEAL."

In connection with the above release, the plaintiff testified, "That is my signature on that release to the Durham and Southern Railway Company dated the 17th day of September, 1955. I signed it. Mr. McAllister was very nice all the way through. * * * He didn't tell me at the time that I was signing a release. * * * I did not try to read this release. He didn't give me a chance to read it. I didn't

ask him to let me read it. This wasn't the kind of thing that I would sign for my regular pay check. I didn't know what it was. I just did not give it no (sic) thought. I have a tenth grade education. I would have to say that I was not rational that day. I didn't know what I was doing that day. (He had testified earlier that he had been taking some pills to relieve his pain.) * * * Mr. McAllister didn't tell me anything about it. All he did was ask me how I was. * * * I didn't know what it was that I was signing or I wouldn't have signed it. * * * At that time Mr. McAllister didn't know what my disability might be in the future from my injury. He didn't make * * * any false representations. The only thing he did do there, he just didn't explain the paper to me. He didn't make any deceitful suggestions to me. He didn't make any fraudulent suggestions to me. He just put the paper down there and I signed it and got my check and left. I didn't think I was going to be hurting in the future."

Before signing the release set out hereinabove, the plaintiff returned to work on 12 September 1955 and continued to work for the defendant until 16 May 1956. The only medical testimony offered by the plaintiff was that of a physician who first examined him on 13 September 1956, who testified, among other things: "I think that he probably demonstrates a permanent partial impairment of about 15% of the spine. I cannot say what his future course will be except to say that after this length of time he probably will continue to have back difficulty and leg difficulty."

At the close of the plaintiff's evidence the defendant moved for judgment as of nonsuit. The motion was denied. The defendant introduced its evidence and renewed its motion. The motion was allowed. The plaintiff appeals, assigning error.

*William T. Hatch, Samuel H. Johnson, Wiley F. Mitchell, Jr., for plaintiff.*

*Charles B. Nye, Clem B. Holding for defendant.*

DENNY, J. The defendant concedes that probably the evidence offered by the plaintiff in the trial below was sufficient to take the case to the jury had the plaintiff not signed the release set out herein, which the defendant pleaded in bar of his right to recover. Therefore, the question for determination is whether or not the plaintiff's evidence in support of his allegations that the release was without consideration and wrongfully procured by means of fraud and duress, was sufficient to warrant its submission to the jury.

It was admitted in the trial below that the defendant was en-

gaged in interstate commerce at the time of the alleged injury. Likewise, it is conceded that this case is governed by the Federal Employers' Liability Act, 45 U.S.C.A., section 51, *et seq.*, and by applicable principles of common law as interpreted and applied by the federal courts. *Chesapeake & O. R. Co. v. Kuhn*, 284 U.S. 44, 76 L. Ed. 157; *Ricketts v. Pennsylvania, R. Co.*, 153 F. 2d 757, 164 A.L.R. 387.

The appellee contends that the release under consideration cannot be set aside except by evidence which is clear, strong, and convincing, citing *Clements v. Life Ins. Co. of Virginia*, 155 N.C. 57, 70 S.E. 1076; *Callen v. Pennsylvania R. Co.*, 162 F. 2d 832, affirmed 332 U.S. 625, 92 L. Ed. 242, while the appellant contends that only the preponderance or greater weight of the evidence is required, citing *Dice v. Akron C. & Y. R. Co.*, 342 U.S. 359, 96 L. Ed. 398.

We have found nothing in the federal decisions at variance in this respect with our own decisions.

In this jurisdiction, if the action is to set aside an instrument allegedly procured by fraud or undue influence, the burden of proof to establish such allegation is by the preponderence or greater weight of the evidence. On the other hand, if the action is to reform an instrument, the evidence must be clear, strong, cogent, and convincing. *Walters v. Bridgers*, 251 N.C. 289, 111 S.E. 2d 176; *Henley v. Holt*, 221 N.C. 274, 20 S.E. 2d 62; *Ricks v. Brooks*, 179 N.C. 204, 102 S.E. 207; *Bolich v. Insurance Co.*, 206 N.C. 144, 173 S.E. 320.

In *Ricks v. Brooks, supra*, it is said: "In an action for reformation it must be alleged and shown, by evidence clear, strong, and convincing, that the instrument sought to be corrected failed to express the true agreement of the parties, because of a mistake common to both parties, or because of the mistake of one party induced by the fraud or inequitable conduct of the other party, and that by reason of ignorance, mistake, fraud, or undue advantage something material has been inserted, or omitted, contrary to such agreement and the intention of the parties. *Ray v. Patterson*, 170 N.C. 226; *Newton v. Clark*, 174 N.C. 393. But this rule does not apply where the purpose is not to reform, but to set aside the instrument for fraud, undue influence, or upon other equitable ground."

The plaintiff alleges lack of consideration in the procurement of the release involved herein. It is generally held in this and other juridictions that the mere inadequacy of consideration alone is insufficient to set aside a release. *Ledford v. Ledford*, 229 N.C. 373, 49 S.E. 2d 794; *Watkins v. Grier*, 224 N.C. 339, 30 S.E. 2d 223; *Ward v. Heath*, 222 N.C. 470, 24 S.E. 2d 5; *McInturff v. Trust Co.*,

201 N.C. 16, 158 S.E. 547; *Aderholt v. R. R.*, 152 N.C. 411, 67 S.E. 978; *Williams v. East St. Louis Junction R. Co.*, 349 Ill. App. 296, 110 N.E. 2d 700; *Kavadas v. St. Louis Southwestern Ry. Co.* (Mo. App.), 263 S.W. 2d 736.

In *Williams v. East St. Louis Junction R. Co., supra,* the case was brought pursuant to the Federal Employers' Liability Act and the evidence raised questions similar to those in the instant case. There, as here, the plaintiff testified he was injured at a particular time, place and manner, but he was the only one who so testified. All other employees who were present at the time and place testified no such injury occurred. The consideration for the release was wages in the sum of $57.38 for six days the plaintiff did not work on account of his alleged injuries. The case was submitted to the jury and the plaintiff obtained a substantial verdict. The court, however, allowed a motion for judgment in favor of the defendant notwithstanding the verdict. There, as here, the plaintiff testified in the trial below that he signed the release but did not know what he was signing and did not know its contents. The Appellate Court said: "Plaintiff very strenuously insists that the validity and effect of this release should be adjudged under federal procedure and that under federal procedure it is required that the question of the validity of a release be submitted to and acted upon by the jury and that the jury's verdict is binding. He relies upon the case of *Dice v. Akron, C. & Y. R. Co.*, 342 U.S. 359, 72 S. Ct. 312, 96 L. Ed. 398. It is unquestionably true that federal law controls actions under the Federal Employers' Liability Act in federal as well as state courts. The *Dice* case, *supra,* however, is authority only for the proposition that where there is competent evidence to support the claim of fraud in securing a release the question must be submitted to a jury for a determination. It furnishes no authority that the courts may not direct a verdict or grant judgment notwithstanding the verdict where there is no evidence to sustain the allegation of fraud. Furthermore, federal law is settled that in order to avoid the effect of a release the burden is on the one attacking the settlement to show that the contract is tainted with invalidity either by fraud or mutual mistake of fact. *Callen v. Pennsylvania Ry. Co.*, 332 U.S. 625, 68 S. Ct. 296, 92 L. Ed. 242, 247. Therefore, the burden rested upon the plaintiff to produce evidence to show fraud as alleged in his reply to the affirmative matter in defendant's answer." The judgment in favor of the defendant was affirmed.

Likewise, in *Kavadas v. St. Louis Southwestern Ry. Co., supra,* the action was brought under the Federal Employers' Liability Act and

the release was based on one day's wages in the sum of $12.18. The plaintiff alleged the release was procured by fraud and false representations. The case was submitted to the jury and the jury returned a verdict in favor of the plaintiff. On appeal the Court said: "As we have already indicated it is our view that the evidence was not sufficient to make an issue for the jury upon the question of fraud in procuring the release. * * * There is some evidence in the record to indicate that plaintiff sustained substantial injuries and we must therefore confess that we are reluctant to hold that he is barred from recovery because he signed a release upon receipt of $12.18. However, this Court cannot relieve the plaintiff of the consequences of his bargain without a valid legal reason for doing so. Mere inadequacy of consideration is not enough. *Vondera v. Chapman,* 352 Mo. 1034, 180 S.W. 2d 704. To hold otherwise would establish a precedent which would make it difficult to settle controversies and would be contrary to the established policy of the law to encourage peaceful settlements. * * *" The judgment was reversed.

There is no evidence in the record before us to support the contention of plaintiff that he was entitled, as a matter of right, to the $144.60 as wages for the time he did not work because of his alleged injuries. Therefore, unless the release was procured by fraud and duress, as alleged in plaintiff's reply to the affirmative matter pleaded in defendant's answer, the judgment as of nonsuit entered in the court below must be upheld.

As we construe the plaintiff's evidence, he does not show any fraud or duress on the part of the defendant or its agents, but, on the contrary, his own testimony negatives his allegation in that respect.

In our opinion, the plaintiff and the defendant entered into the release in good faith. Neither party at the time of the execution of the release had any idea that the plaintiff had sustained an injury that might or would develop into any permanent disability. There may have been mutual mistake on the part of the plaintiff and the defendant in this respect, as was alleged and relied on in *Callen v. Pennsylvania Ry. Co., supra;* however, in the instant case, the plaintiff's cause of action is not bottomed on mistake but on fraud and duress.

In light of the record before us and applicable decisions bearing thereon, we are constrained to hold that the ruling of the court below must be upheld.

Affirmed.

PARKER, J., dissents.