MAYNARD *v.* DURHAM & SOUTHERN
RAILWAY CO.

No. 183. Argued January 12, 1961.—Decided February 20, 1961.

*Charles F. Blanchard* argued the cause for petitioner.
With him on the brief were *William T. Hatch* and *William
Joslin.*

*Charles B. Nye* argued the cause for respondent. With
him on the brief was *Clem B. Holding.*

MR. JUSTICE DOUGLAS delivered the opinion of the
Court.

Petitioner, an employee of respondent, sued in a North
Carolina court for damages under the Federal Employers'
Liability Act, 45 U. S. C. § 51. As a defense, respondent
tendered a release signed by petitioner and moved for a
nonsuit. The motion was allowed after all the evidence
was in, and the Supreme Court of North Carolina

affirmed, one judge dissenting. 251 N. C. 783, 112 S. E. 2d 249.

We said in *Dice* v. *Akron, C. & Y. R. Co.*, 342 U. S. 359, 361, that the "validity of releases under the Federal Employers' Liability Act raises a federal question to be determined by federal rather than state law." While that case dealt with a release challenged on the ground of fraud, the rule it announced also governs releases challenged for lack of consideration. For releases obtained by fraud or for no consideration could equally defeat the federal rights created by this Act of Congress. It was because of our doubts that the decision below squared with that rule that we brought the case here on certiorari. 363 U. S. 839.

Petitioner was injured August 22, 1955, and came back to work on September 12, 1955. On September 17 he signed the release in question. There is conflicting evidence as to what happened at that time. According to petitioner he went into the office of Mr. McAllister, General Manager, and asked for his pay check; Mr. McAllister "gave me a paper, told me to sign that, and I signed it"; petitioner did not read the paper; he signed it "because every check that we ever got from the railroad we had to sign for it"; he signed thinking he was signing for his pay check; he thought the railroad owed him $144.60 for labor, the amount he received; he "never received anything from the railroad as a result of the injury." Petitioner also testified that some six months after he received the $144.60, he was asked to sign a release for his injuries and refused. As to the paper he signed on September 17, petitioner further testified that Mr. McAllister "didn't make me any false representations. The only thing he did do there, he just didn't explain the paper to me. He didn't make any deceitful suggestions to me. He didn't make any fraudulent suggestions to me." Petitioner also testified, "The $144.60 that I received there from Mr.

McAllister was not for injuries. That was my pay check."

On the other side there was testimony by a former employee, who was petitioner's witness, that it was the policy of the company not to pay wages for the time a person was "off from work" unless he signed a release and that policy applied when an employee did not work because of an injury. This witness also testified that in a conversation he and petitioner had with Mr. McAllister,* McAllister told petitioner he would have to sign a release before he could get back pay. Moreover, Mr. McAllister testified that petitioner stated "that he would like to settle up with the company, that he was broke and needed some money"; that McAllister told petitioner "that he knew if we settled up with him it would be necessary for him to sign a release"; that petitioner said he was "willing to sign a release" and that that was "the purpose of his visit"; that he, McAllister, explained to petitioner what was in the release and that if he signed it he would be paid "for his time lost"; that McAllister did not promise "any future payments" if petitioner signed the release "except that possibly we would take care of his doctor's bills if he had any."

In addition petitioner testified that while he did not know it was the railroad's policy to pay an injured employee for time lost only upon signing a release, "This wasn't the kind of thing that I would sign for my regular pay check. I didn't know what it was. I just did not give it no thought."

We find no evidence sufficient for a jury that respondent obtained the release by fraud, duress, or undue influence.

---

*The witness, who was Chairman of the local union at the time of the accident, could not remember whether this meeting took place before or after September 17, 1955 (the date of the release), although he was sure it took place after August 22, 1955. Petitioner testified this meeting took place after September 17.

We conclude, however, that there was a jury question as to whether the release was given for a consideration.

We think the correct rule concerning the adequacy of consideration for a release of claims under the Act was stated in *Burns* v. *Northern Pac. R. Co.*, 134 F. 2d 766, 770. "In order that there may be consideration, there must be mutual concessions. A release is not supported by sufficient consideration unless something of value is received to which the creditor had no previous right." If, in other words, an employee receives wages to which he had an absolute right, the fact that the amount is called consideration for a release does not make the release valid. See *Hogue* v. *National Automotive Parts Assn.*, 87 F. Supp. 816, 821.

On this record there is a genuine issue of fact concerning the presence of consideration for the release. Petitioner claimed that what he received was his pay check, rightfully owing. Against that was evidence that no back wages were due and that an amount equal to back wages was paid for the release. It is not for the judges to resolve the conflict and to conclude that one side or the other was right. The issue of fact that is presented is one on which fair-minded jurors might honestly differ. Cf. *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 510.

*Reversed.*

Mr. Justice Frankfurter, dissenting.

This case was brought here on a meager typewritten petition which invoked the Court's certiorari jurisdiction on the claim that the North Carolina Supreme Court had disregarded controlling federal standards for determining the validity of a release from liability under the Federal Employers' Liability Act. In reversing the North Carolina Supreme Court, this Court does not support the grounds on which review was urged. The oral argument dispelled such a claim and revealed, what the Court's

opinion now recognizes, that the conflict between the state court and this Court turns on assessment of the trial testimony. This Court has repeatedly announced that the writ of certiorari is not to be employed to pass on matters of evidence and our Rule 19 formally bars such an obvious misuse of our discretionary jurisdiction. Again and again we deny petitions for certiorari which merely raise disputed issues of fact. Instead of making cases arising under the Federal Employers' Liability Act an exceptional class, Congress in 1916 explicitly withdrew Federal Employers' Liability cases from the Court's obligatory jurisdiction. 39 Stat. 727. For reasons set forth at length in my dissenting opinion in *Ferguson* v. *Moore-McCormack Lines, Inc.,* 352 U. S. 521, 524, I would dismiss this writ as improvidently granted. Doing so after argument has been had would serve to discourage petitions brought solely to review matters of evidence; to adjudicate the case on the merits by taking one view of the evidence as against another only encourages petitions that ought not to be filed here. See *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387.

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE HARLAN joins, dissenting.

Petitioner was employed by respondent as a "section" worker at Apex, North Carolina. He normally worked five eight-hour days per week, and was compensated for hours worked at a rate aggregating about $290 per month. The record is not entirely clear on the point, but it would appear that he had received the wages he had earned through Friday, August 19, 1955. On Monday, August 22, he was injured in the course of his work, but he worked the remainder of the day and also the next, Tuesday, August 23. He was then off work for a total of 19 days, 13 of which were working days, returning to

work on Monday, September 12, and working through Friday, September 16, of that week. On Saturday, September 17, he signed a "Release" of all claims against his employer on account of his injury and delivered the same to his employer in exchange for its check to his order in the amount of $144.60—which, it appears, is the exact amount he would have earned had he worked each working day through the period he was off.

At the conclusion of the trial of his action, brought under the Federal Employers' Liability Act against his employer, the trial court rejected his contentions that the "Release" was (1) obtained by fraud and (2) was not supported by any consideration, held the "Release" to be a valid bar of his claim for damages, and dismissed the suit. On appeal, the Supreme Court of North Carolina affirmed, 251 N. C. 783, 112 S. E. 2d 249, and we granted certiorari. 363 U. S. 839.

The only question here is whether that judgment was justified by the record. With all respect, I think it was.

I agree with the Court that the evidence wholly failed to sustain the claim of fraud. In fact, as the Court's opinion shows, petitioner's testimony affirmatively discloses that there was none. He testified that respondent's officer, with whom he dealt in respect of the "Release," "didn't make me any false representations. . . . He didn't make any deceitful suggestions to me. He didn't make any fraudulent suggestions to me."

But I am equally unable to find in the record any evidence to show that the "Release" was given without consideration. Petitioner admits that he was required to sign the "Release" before respondent would pay him the $144.60 which he received in exchange for it. Of course, I agree with the Court's statement of the law that " 'A release is not supported by sufficient consideration unless

something of value is received to which the [releasor] had no previous right.' If, in other words, an employee receives wages to which he had an absolute right, the fact that the amount is called consideration for a release does not make the release valid."

Here, however, there is no evidence that the $144.60 which petitioner received in exchange for the release had been earned by, or was due, him. It is true that that amount was exactly the sum he would have earned in the relevant period had he worked. But he did not work in that period. He admits that he was off work from Wednesday morning, August 23, to Monday morning, September 12—a total of 19 days, 13 of which were working days. Of course, he could have had a contract with his employer obligating it to pay him normal wages while disabled by injury. or sickness. But he has not shown that any such contract existed.

As I read and understand them, these undisputed facts fail to show that the amount paid by respondent to petitioner for the Release was his own money—money that he had earned as wages, or that was otherwise owing to him. As I see it, then, petitioner has wholly failed to produce any evidence to show that the Release was made without consideration.

Whether petitioner may have had a solid basis to rescind the Release—upon the ground of mutual mistake of fact, *i. e.,* that he was more seriously injured than either he or respondent believed at the time the Release was made, of which there is considerable indication in the record—would present a question of more substance. But that question is not before us, as petitioner has not proceeded on that theory.

On the record as it stands, I think the North Carolina courts were right, and that their judgment should be affirmed.