**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN RENE RODRIGUEZ; RAYSHAWN
WARD,

          *Plaintiffs-Appellees,*

        v.

SMITHFIELD PACKING COMPANY,
INCORPORATED; DANIEL M. PRIEST,

          *Defendants-Appellants,*

        and

LASAVEN RICHARDSON, in his
individual and official capacities as
a Bladen County Deputy Sheriff;
TERRY C. DAVIS, in his individual
and official capacities as a Bladen
County Deputy Sheriff; BRYSON
ROBINSON, in his individual and
official capacities as a Bladen
County Deputy Sheriff; GENE
LAMBERT, in his individual and
official capacities as a Bladen
County Deputy Sheriff; BLADEN
COUNTY SHERIFF'S DEPARTMENT;
PEERLESS INSURANCE COMPANY; THE
INSURANCE COMPANY OF NORTH
AMERICA,

           *Defendants.*

No. 02-1835

JOHN RENE RODRIGUEZ; RAYSHAWN WARD,

*Plaintiffs-Appellants,*

v.

SMITHFIELD PACKING COMPANY, INCORPORATED; DANIEL M. PRIEST,

*Defendants-Appellees,*

and

LASAVEN RICHARDSON, in his individual and official capacities as a Bladen County Deputy Sheriff; TERRY C. DAVIS, in his individual and official capacities as a Bladen County Deputy Sheriff; BRYSON ROBINSON, in his individual and official capacities as a Bladen County Deputy Sheriff; GENE LAMBERT, in his individual and official capacities as a Bladen County Deputy Sheriff; BLADEN COUNTY SHERIFF'S DEPARTMENT; PEERLESS INSURANCE COMPANY; THE INSURANCE COMPANY OF NORTH AMERICA,

*Defendants.*

No. 02-1893

JOHN RENE RODRIGUEZ; RAYSHAWN WARD,

Plaintiffs-Appellees,

v.

DANIEL M. PRIEST; LASAVEN RICHARDSON, in his individual and official capacities as a Bladen County Deputy Sheriff; TERRY C. DAVIS, in his individual and official capacities as a Bladen County Deputy Sheriff; BRYSON ROBINSON, in his individual and official capacities as a Bladen County Deputy Sheriff; GENE LAMBERT, in his individual and official capacities as a Bladen County Deputy Sheriff; BLADEN COUNTY SHERIFF'S DEPARTMENT,

Defendants-Appellants,

and

SMITHFIELD PACKING COMPANY, INCORPORATED; PEERLESS INSURANCE COMPANY SURETY; THE INSURANCE COMPANY OF NORTH AMERICA,

Defendants.

No. 02-2024

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-00-613-5-BR(2))

Argued: June 3, 2003

Decided: July 30, 2003

Before WILKINSON and MOTZ, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Affirmed in part and reversed in part by published opinion. Judge
Wilkinson wrote the opinion, in which Judge Motz and Senior Judge
Beezer joined.

---

## COUNSEL

**ARGUED:** Earle Duncan Getchell, Jr., MCGUIREWOODS, L.L.P.,
Richmond, Virginia; Andrew John Hanley, CROSSLEY, MCIN-
TOSH, PRIOR & COLLIER, Wilmington, North Carolina, for Appel-
lants. Michael Griffin Okun, PATTERSON, HARKAVY &
LAWRENCE, L.L.P., Raleigh, North Carolina, for Appellees. **ON
BRIEF:** Jeffrey S. Shapiro, Jonathan P. Harmon, MCGUIRE-
WOODS, L.L.P., Richmond, Virginia, for Appellants. Ann E. Gron-
inger, PATTERSON, HARKAVY & LAWRENCE, L.L.P., Raleigh,
North Carolina, for Appellees.

---

## OPINION

WILKINSON, Circuit Judge:

Plaintiffs John Rodriguez and Rayshawn Ward filed suit against
Daniel Priest, Smithfield Packing Company, and several members of
the Bladen County Sheriff's Department, alleging that they were
unlawfully arrested in the wake of a unionization election at a Smith-
field Packing facility. After dismissing the Sheriff's Department
defendants and some of the claims against Smithfield Packing and
Priest, the district court allowed the case to go to trial. The jury found
both Priest and Smithfield Packing liable for violating plaintiffs' con-
stitutional rights. Because plaintiffs released Priest and the Sheriff's
Department defendants from liability, and because Priest's actions did

not constitute official policymaking on behalf of Smithfield Packing, we affirm in part and reverse in part. To do otherwise would transform a private company into a municipal corporation without sufficient justification.

I.

Smithfield Packing operates a pork processing plant in Tar Heel, North Carolina, which is located in Bladen County. Defendant Daniel Priest was Chief of Security at the Tar Heel plant. He had been responsible for setting up the security program at the Tar Heel facility, including hiring the security guards and developing security procedures. On a day to day basis, he was charged with overseeing the plant's twenty-four full-time security guards and protecting Smithfield's employees and assets.

Priest was also affiliated with the Bladen County Sheriff's Department as an auxiliary deputy sheriff — a sworn deputy sheriff who is not on the payroll and works at the discretion of the County Sheriff. As an auxiliary deputy sheriff, Priest had the same legal authority as a full-time deputy, including the power to arrest. The County Sheriff also charged Priest with handling many law enforcement functions on behalf of the Sheriff's Department at the Tar Heel plant, including criminal investigations and the service of civil papers and criminal warrants. This freed up the full-time deputies to handle incidents elsewhere in Bladen County. Priest also performed special assignments for the Sheriff's Department that were unrelated to Smithfield Packing. Priest was at all times, however, in a subordinate role within the Sheriff's Department: he reported to the County Sheriff, was subject to Sheriff's Department regulations, and had no managerial authority over other deputies when they were dispatched to the Tar Heel plant (as they were, on average, three or four times a week when Priest was unavailable).

In 1997, after previous efforts to unionize the workers at the Tar Heel plant had failed, the United Food and Commercial Workers Union began a new organization campaign at the facility. John Rodriguez was an organizer for the union who worked on the Smithfield Packing organization campaign. Rayshawn Ward was a Smithfield employee who served as an election observer on behalf of the union.

At the conclusion of the unionization campaign, the NLRB conducted an election at the Tar Heel Plant in August 1997. On August 22, 1997, the votes were counted in the employee cafeteria. Priest requested the assistance of the Sheriff's Department with security during the count, and the Sheriff sent between eight and ten deputies to the plant. In the cafeteria, there were between 100 and 150 supporters of Smithfield management and between fifteen and twenty representatives of the union. Both Ward and Rodriguez were in the cafeteria during the vote count.

After the votes were counted, it was announced that the union had lost the election. The union representatives were ordered to leave the premises, and they began to walk out. At this point, trouble broke out. While the parties disagree about which side was at fault for the ensuing melee, the facts relevant to our decision are clear. Priest sprayed Ward with pepper spray, kneed him in the back as Ward lay on the ground, handcuffed him, and arrested him. A full-time sheriff's deputy handcuffed Rodriguez and arrested him. Both Ward and Rodriguez were then taken to jail on a series of misdemeanor charges, apparently according to Priest's instructions.[1] Ward was charged with two counts of assault, one count of property destruction, and one count of inciting a riot, and Rodriguez was charged with two counts of assault on government officials.

Plaintiffs were represented on their criminal charges by a union attorney, J. Michael McGuinness. McGuinness met with the County Sheriff and suggested that plaintiffs sign a release of civil liability in exchange for a delayed prosecution agreement. McGuinness then met with an Assistant District Attorney and made the same proposal. McGuinness subsequently drafted the releases himself. The release agreements read, in relevant part:

> I hereby fully release and forever discharge the Bladen County Sheriff's Department, including but not limited to Sheriff Steve Bunn [and several named sheriff's deputies] . . . from all existing claims which I may have against [them]

---

[1]Although this point is contested, we assume for the purposes of this opinion that Priest was responsible for the arrest of both Ward and Rodriguez.

for alleged conduct that occurred on or about August 22, 1997. . . .

I will not initiate any lawsuit, complaint or legal claim against any of the Releasees in any federal, state or any other court or other tribunal for any conduct that occurred on or about August 22, 1997.

Ward signed the release on September 29, 1997, and the prosecution against him was suspended on the same day with the understanding that all charges would be dropped if Ward did not violate any North Carolina laws for the following twelve months. Rodriguez signed the release on October 7, 1997, and his prosecution was then suspended under the same conditions that Ward received.

In August 2000, Ward and Rodriguez filed suit in federal court against the Bladen County Sheriff's Department, the County Sheriff, and several individual sheriff's deputies ("the Sheriff's Department defendants"), as well as Smithfield Packing and Priest. Ward and Rodriguez claimed that defendants had violated the First Amendment, the Fourth Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1981. Ward and Rodriguez also brought several state law claims, including false arrest, malicious prosecution, and assault and battery. The district court granted summary judgment to the Sheriff's Department defendants on all counts. The district court also granted summary judgment to Priest and Smithfield on all counts except plaintiffs' Fourth Amendment and Equal Protection Clause claims.[2]

The case then proceeded to trial. After evidence had been presented, the district court granted judgment as a matter of law to the plaintiffs under Fed. R. Civ. P. 50 on two issues, holding that Priest and Smithfield Packing had acted under color of state law on August 22, and that Priest was a final policymaker for Smithfield under 42 U.S.C. § 1983. The case was sent to the jury, which found that Priest had violated plaintiffs' constitutional rights. The jury awarded Rodri-

---

[2]The district court dismissed all state law claims against Smithfield on the ground that they were either time-barred under North Carolina law or preempted under the NLRA. Plaintiffs do not challenge these rulings on appeal.

guez $25,000 in compensatory damages and $130,000 in punitive damages, and awarded Ward $75,000 in compensatory damages and $525,000 in punitive damages. The district court denied defendants' post-trial motions for judgment as a matter of law or a new trial. This appeal ensued.

II.

Ward and Rodriguez appeal the district court's grant of summary judgment to the Sheriff's Department defendants. They argue that the release-dismissal agreements are unenforceable under federal law and cannot support summary judgment on those claims.

We review the district court's grant of summary judgment on this score de novo. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). In deciding whether a genuine issue of material fact exists, "the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *Id.* (citation omitted).

In *Town of Newton v. Rumery*, 480 U.S. 386 (1987), the Supreme Court held that "a court properly may enforce an agreement in which a criminal defendant releases his right to file an action under 42 U.S.C. § 1983 in return for a prosecutor's dismissal of pending criminal charges." *Id.* at 389, 397. Justice O'Connor, whose fifth vote was dispositive, observed in her concurrence that in order to escape liability under a release-dismissal agreement, "[t]he defendants in a § 1983 suit . . . must *prove*" that a release of liability "was voluntarily made, not the product of prosecutorial overreaching, and in the public interest." *Id.* at 401 (O'Connor, J., concurring in part and concurring in the judgment) (emphasis in original); *see also id.* at 398 (majority opinion). Of particular interest in this case-by-case inquiry are the "knowledge and experience of the criminal defendant," the "nature of the criminal charges," the "existence of a legitimate criminal justice objective for obtaining the release," "whether the defendant was counseled," and whether the agreement was "executed under judicial supervision." *Id.* at 401-02 (O'Connor, J.).

The circumstances surrounding the execution of plaintiffs' release-dismissal agreements lead us to conclude that the agreements must be enforced in this case. Most important, plaintiffs conceived, initiated,

and proposed the arrangement; it was not presented to them immediately after their arrest by an overreaching prosecutor who knew that civil liability might arise from the underlying events. Furthermore, plaintiffs drafted the release document, giving themselves first opportunity to shape its scope and effect. They were represented by counsel and have not challenged his competency or experience. They had more than a month to decide whether or not to actually proceed with the agreement. And the likelihood that plaintiffs were unduly coerced is particularly small, since they faced only misdemeanor charges. *See id.* at 401 ("[T]he greater the charge, the greater the coercive effect.").[3] We therefore hold that the release-dismissal agreement was enforceable, and the Sheriff's Department defendants were properly dismissed from this case.[4]

---

[3]Plaintiffs also argue that the release, despite its express language, was not supported by consideration sufficient to render it enforceable, because the release was not executed in return for the dismissal agreement. *See Maynard v. Durham & S. Ry. Co.*, 365 U.S. 160, 163 (1961). The evidence, however, shows that plaintiffs proposed the release-dismissal agreement to both the Sheriff and the prosecutor. At the least, a Sheriff's agreement to support the dismissal of criminal charges constitutes adequate consideration for the release in this case. Moreover, whatever the level of prosecutorial involvement, the release serves the public interest by sparing Bladen County the expense of future civil litigation. *See Town of Newton*, 480 U.S. at 399-400 (O'Connor, J., concurring in part and concurring in the judgment) ("Sparing the local community the expense of litigation associated with some minor crimes for which there is little or no public interest in prosecution may be a legitimate objective of a release-dismissal agreement.").

[4]While we reject the plaintiffs' appeal on this score, we deny the Sheriff's Department defendants' request for attorney's fees under 42 U.S.C. § 1988. Plaintiffs' argument was not "frivolous, unreasonable, or without foundation." *DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999) (citation omitted). But since "in the ordinary course, a prevailing party is entitled to an award of costs," *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994), we hold that costs must be awarded to the Sheriff's Department defendants. Plaintiffs have suggested no reason to depart from this "presumption in favor of an award of costs to the prevailing party." *Id.*

III.

For their part, defendants argue that Priest should not have been found liable for violating plaintiffs' constitutional rights. They contend that the district court should instead have granted Priest judgment as a matter of law.

We review de novo the district court's denial of Priest's motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999). In doing so, we view the evidence in the light most favorable to plaintiffs, and draw all reasonable inferences in their favor. *Id.*

In order to render Priest liable under 42 U.S.C. § 1983, plaintiffs must show that he was acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("'[T]he party charged with the deprivation [of federally secured rights] must be a person who may fairly be said to be a state actor.'"). The Fourth Circuit has held that "'[o]ne of the paradigmatic means by which a private party becomes subject to section 1983 is through the government's conferral upon that party of what is, at core, sovereign power'" — a power, in other words, that is "'traditionally the exclusive prerogative of the State.'" *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 342 (4th Cir. 2000) (citation omitted). "[T]he ultimate resolution of whether an actor was . . . functioning under color of law is a question of law for the court." *Id.* at 344 n.7.

In this case, Priest was an auxiliary deputy sheriff invested with the full panoply of powers afforded to full-time deputies, including the power to arrest. The County Sheriff had given Priest primary responsibility in his role as auxiliary deputy sheriff for a broad range of law enforcement work at the plant, from conducting criminal investigations and making arrests to serving civil and criminal papers. On August 22, Priest was working in concert with the Sheriff's Department to provide security in a potentially volatile situation. He had a deputy sheriff badge clipped on his belt, a sheriff's department radio, handcuffs, pepper spray, and a gun. And he testified that he told Ward "Sheriff's Department, you are under arrest," handcuffed him, and enlisted another deputy to help him take Ward out of the building and to the waiting police car. All of this was the natural result of Priest's

official role within Bladen County, in which he was expected to perform law enforcement functions at the Tar Heel plant on behalf of the Sheriff's Department.

In light of these facts, we are compelled to find that Priest was acting under color of state law when making arrests at the Tar Heel facility on August 22. It is beyond dispute that the police function is "one of the basic functions of government," a "most fundamental obligation of government to its constituency." *Foley v. Connelie*, 435 U.S. 291, 297 (1978). And an arrest is "the function most commonly associated with the police." *Id.* at 298. It would be hard to imagine, in other words, a more prototypically representative government function than Priest's use of his official capacity to effectuate the arrest of Ward and Rodriguez.

The problem for plaintiffs, however, is that once we find that Priest was acting under color of state law when making the arrests, he is covered by the release and cannot be sued by Ward or Rodriguez. The agreements plaintiffs signed "fully release and forever discharge the Bladen County Sheriff's Department, including but not limited to [the County Sheriff and several named deputies]." Since plaintiffs were responsible for drafting this agreement, we must construe its terms against them. Because Priest was acting as an auxiliary deputy sheriff when making the arrests, and because the agreement evinces the unmistakable intent to release all agents of the Bladen County Sheriff's Department, we hold that Priest was covered by the release. He is therefore not subject to suit for the actions he took on August 22.

IV.

Defendants also argue that Smithfield Packing should not have been found liable for violation of plaintiffs' constitutional rights. We review de novo the district court's decision to deny Smithfield Packing's motion for judgment as a matter of law. *Paramount Parks*, 195 F.3d at 727.

"[T]he principles of § 1983 municipal liability . . . apply equally to a private corporation that employs special police officers." *Id.* at 727-28. This means that "a private corporation is not liable under § 1983 for torts committed by special police officers when such liability is

predicated solely upon a theory of *respondeat superior*." *Id.* at 728. Rather, private corporations can only be held liable under § 1983 if "an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* While "'official policy' often refers to formal rules or understandings," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), corporate liability may also "be imposed for a single decision by [corporate] policymakers under appropriate circumstances." *Id.*

Plaintiffs argue that, given his position as Chief of Security, Priest was the final policymaker for Smithfield Packing with respect to all arrests and investigations at the Tar Heel plant. They point to evidence that Smithfield Packing made Priest the manager of security at the Tar Heel plant, and contend that his decision to arrest Ward and Rodriguez must therefore be imputed to Smithfield Packing for the purposes of § 1983 liability.

What plaintiffs ignore, however, is that Smithfield Packing could not have delegated any policymaking authority over arrests to Priest, because the company had no authority over county law enforcement policies that it could have delegated. Instead, because the arrest of Ward and Rodriguez was explicitly executed under Priest's authority as a sheriff's deputy seeking to enforce North Carolina state law, it was a decision which flowed from the authority delegated to Priest by the County Sheriff. And that authority was, naturally enough, constrained at all times by the County Sheriff's oversight; plaintiffs do not argue that the Sheriff had anything less than direct control over Priest's activities as an auxiliary deputy sheriff. In his capacity as auxiliary deputy sheriff, in other words, Priest reported to the County Sheriff, not to Smithfield Packing. The testimony of both Priest and the County Sheriff make this abundantly clear. Priest stated that he "work[ed] at the discretion of the Sheriff," and the Sheriff acknowledged that Priest reported to him "with respect to work that [Priest] did in helping out the Sheriff's Department" and could not "ignore or . . . override any of [the Sheriff's] instructions with respect to providing law enforcement at the Tar Heel facility." Any relevant policy for *Monell* purposes with respect to arrests anywhere in Bladen County was thus set by the County Sheriff, not Priest, and any status as a poli-

cymaker on that score was likewise defined by the Sheriff's Department's internal organization structure.[5]

We do not, of course, hold that a private corporation may never be liable under § 1983 for the actions of a sheriff's deputy hired as a security guard. *See Paramount Parks*, 195 F.3d at 727-28. When a security guard is acting as a sheriff's deputy exercising the quintessential state function of arrest, however, the assumption is that state policies and state training would be guiding the exercise of that authority, at least in the absence of evidence that the private entity sought to supplant state policies or training procedures with policies of its own. And while plaintiffs argue the presence of anti-union animus on the part of the company, there is insufficient evidence to support their view that any such policy displaced the Sheriff's procedures with respect to the arrest of one (or at most two, if one were to count Rodriguez) of approximately twenty union supporters at the meeting.

In short, we see no evidence that "an official policy or custom of the corporation cause[d] the alleged deprivation of federal rights." *Id.* at 728. We therefore hold that the district court erred by denying Smithfield Packing's motion for judgment as a matter of law and reverse its judgment on that score.

## V.

In the final analysis, we cannot accept plaintiffs' efforts to avoid the consequences of their state action argument and the consequences of having signed the release. Plaintiffs have understandably argued that Priest was a state actor. We agree, but plaintiffs must then accept the legal consequences that flow from that status. The release applied to Priest because he is an auxiliary deputy sheriff, and the policies that guided his actions in carrying out his sheriff's duties are also pre-

---

[5]Plaintiffs' argument in the alternative that Priest was a joint actor with the Sheriff's Department is similarly unavailing. *See Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980). Even assuming arguendo that he was a joint actor, Priest would still have to be found to be a policymaker in order to impute liability to Smithfield Packing under § 1983. And of course the release-dismissal agreement would still absolve Priest himself of legal liability for the August 22 events.

sumptively those of the state. For this reason, the judgment against defendants cannot stand.

We affirm the dismissal of the claims against the Sheriff's Department defendants, affirm the district court's decision not to grant attorney's fees to the Sheriff's Department defendants, hold that judgment as a matter of law should have been granted to both Priest and Smithfield Packing on all issues related to liability, and remand the case for further proceedings consistent with this opinion.

*AFFIRMED IN PART AND REVERSED IN PART*